Ex parte FLOYD H. RODY, Petitioner.—152 S. W. (2d) 657.

Court en Banc, June 10, 1941.

2

No attorney for petitioner.

*Roy McKittrick,* Attorney General, and *Ernest Hubbell,* Assistant Attorney General, for respondent.

ELLISON, J.—*Habeas corpus.* The petitioner is confined in the State penitentiary and contends that under Sec. 9086, R. S. 1939, sec. 8442, Mo. Stat. Ann., p. 6214, enacting the so-called "three-fourths rule" he is entitled to discharge. His imprisonment is accredited to a warrant of commitment issued by the Jackson County circuit court, dated January 9, 1937, and based on a five-year prison sentence imposed after a plea of guilty to robbery. In October, 1938, while transferred to a sawmill camp operated by the penitentiary in Callaway County and under guard, petitioner fled and escaped apprehension for three days, said escape being recorded in the prison records. The Warden contends this episode deprives the petitioner of the benefit of the three-fourths rule. Petitioner contends it does not. Both sides agree the case involves a construction of Sec. 9086, supra, as applied to the foregoing facts.

The statute provides that "any convict who is now or may hereafter be confined in the penitentiary, and who shall serve three-fourths of the time for which he or she may have been sentenced, *in an orderly and peaceable manner, without having any infraction of the rules of the prison or law of the same recorded against him,* shall be discharged in the same manner as if said convict had served the full time for which sentenced, . . ." (Italics ours.)

In his brief the Warden of the penitentiary, represented by the learned Assistant Attorney General, concedes arguendo that petitioner's escape from the sawmill camp violated no *rule* of the institution, but contends that it did violate a *law* of the same, within the meaning of those words in the statute, the law being Sec. 4307, R. S. 1939, sec. 3913, Mo. Stat. Ann., p. 2751, which provides that "if any person confined in the penitentiary for any term less than life shall escape from such prison, or, being out under guard, shall escape from the custody of the officers, he shall be liable to the punishment imposed

for breaking prison." The Warden further asserts that the words "confined in the penitentiary" appearing in Sec. 4307, supra, apply to the petitioner although he was at the sawmill camp, and not in the penitentiary, when he escaped; and argues that if this be not true then the petitioner cannot claim the benefits of the three-fourths rule under Sec. 9086, supra, because that section uses the same identical words and limits such benefits to convicts now or hereafter "confined in the penitentiary."

The petitioner, *pro se,* in a well written brief begins by contending to the contrary that Sec. 4307 does not apply to him because he was detailed to the sawmill camp and was not confined in the penitentiary when he escaped. On that point he cites State v. Betterton, 317 Mo. 307, 292 S. W. 545, and Ex parte Carney, 343 Mo. 556, 122 S. W. (2d) 888. Second, he maintains that the statute, Sec. 4307, is a law of the State, not a law of the penitentiary alone; and that the words "law of the same" used in Sec. 9086, supra, mean the *by-laws* or regulations for the government of the penitentiary, made by the Commission of the Department of Penal Institutions under authority of Sec. 8985, R. S. 1939, sec. 8338, Mo. Stat. Ann., p. 6181, and Sec. 9041, R. S. 1939, ▪ sec. 8396, Mo. Stat. Ann., p. 6201. Third, petitioner urges that even if the statute, Sec. 4307, be regarded as a law of the prison, still the Warden and other officials would have no authority to determine whether he had violated the provisions thereof, and to impose punishment therefor. Only a legally constituted court could do that, he contends. Along the same line the petitioner still further affirms that if the statute be considered a regulation of the prison it would be unavailing because printed copies of this and the other rules and regulations of that institution have never been posted, as required by Sec. 9041, supra.

▪▪ We are unable to agree that State v. Betterton, supra, and Ex parte Carney, supra, support petitioner's first contention. On the contrary, the Betterton decision is against him. The concluding lines of the opinion held Sec. 4307 (then Sec. 3161, R. S. 1919) did apply to a prisoner escaping from a prison *farm,* and there is no difference in principle between escaping from a prison farm and a prison sawmill. Sec. 4307 is grouped with two other statutes, Sec. 4306 and Sec. 4308, all opening with the same clause and containing the same phrase "confined in the penitentiary." Section 4306 applies to convicts in lawful custody going to the penitentiary, and to those who break the prison walls and escape after they are in. Sec. 4307, supra, specially applies to convicts who escape from the custody of the officers while out under guard (the section invoked by the Warden in this case.) And Sec. 4308 deals with convicts who escape from within the prison "without breaking such prison." That was the section upon which the information in the Betterton case was

4

based, for escaping from a prison farm. But, as already stated, the decision held the prosecution should have been under Sec. 4307.

These three sections and Sec. 9086, supra, are *in pari materia* and should be construed together. There can be no question about the fact, we think, that under their provisions any convict held in custody under a commitment for the service of a penitentiary sentence is at least constructively "confined in the penitentiary," whether he be going to the penitentiary, or in the penitentiary, or outside under guard. Section 8989, R. S. 1939, sec. 8341, Mo. Stat. Ann., p. 6183, in the Article dealing with the enterprises of penal institutions, such as farms, quarries, factories and the like, seems to contemplate this for it says the Commission of the Department of Penal Institutions "shall at all times and under all circumstances mentioned or authorized under this article reserve the supervision of all prisoners under sentence and committed to said commission."

Neither are we able to see that the Carney case, supra, cited by the petitioner, helps him. In that case a convict while out on parole from a sentence for one felony, committed another and was convicted and sentenced therefor. He was required to serve out this second sentence and then was detained to serve the full remainder of his first sentence without benefit of the three-fourths rule, his parole from the latter sentence having been revoked in the meantime. No demerits had been recorded against him during his incarceration. The decision held he was entitled to claim the rule, and ordered his discharge. This conclusion was based on two grounds: (1) that the first part of Sec. 9086, quoted above, which grants the rule, is not affected by the conditions in a subsequent proviso of the section; (2) that the statute was enacted to encourage obedience to the rules of the pentitentiary by convicts undergoing punishment therein, and does not take into account infractions of law while the convict is out on parole. In other words the opinion construes the statute as meaning that if the convict *while* confined in the penitentiary obeys the rules and laws of the institution and is not recorded otherwise, he is entitled to the benefit of the rule regardless of infractions of law committed by him when out on parole, these being unrelated matters.

Granting the Carney case was well ruled on its facts, there are vital differences between it and the instant case. There the convict was out on parole when he committed the second offense. His parole was a conditional pardon and he was not "confined in the penitentiary" as was the petitioner here. Further, the second crime there was merely grand larceny in a remote county, whereas here the petitioner escaped from the prison while constructively confined therein but actually outside the walls under guard. Crimes committed by a paroled convict in another environment against other persons may be said to have no relation to the administration of the penitentiary, as the Carney case rules—except that incidentally they may bring the

culprit back for expiation there- ▮ of, and also that they exhibit a criminal tendency. But where a statute is enacted for the *regulation* of the penitentiary and the enforcement of discipline therein, as was Sec. 4307, supra, we are unable to see why it should not be as binding on the convict as if the same requirement had been made by a regulation of less dignity, namely a mere rule of the institution. Undoubtedly Sec. 4307 is a law governing the inmates of the penitentiary, within the meaning of Sec. 9086.

▮ What is said in the last paragraph disposes of petitioner's second contention, that Sec. 4307 is a law of the State, not a law or by-law of the penitentiary as contemplated by Sec. 9086. But nevertheless we must consider his third contention, in the same connection, that even though Sec. 4307 be considered a law of the penitentiary yet it is also a state statute, in consequence of which his guilt of a violation thereof cannot be determined by the prison authorities but must be adjudicated by a court. We cannot agree to this. As stated in the Carney case, the conditions of the three-fourths rule enacted by Sec. 9086, supra, must be read into every judgment of conviction. They offer a reward in the form of diminished incarceration to every convict for obedience to the rules of the prison and laws of the same.

But the enforcement of these rules and law, so far as they affect the *reward*, is administrative, not judicial.* Section 9086, itself, requires breaches thereof to be recorded on the *prison* records. Sec. 8985, supra, requires the Commission of the Department of Penal Institutions to make and enforce such by-laws, rules and regulations as *they* deem necessary. And Sec. 9041, supra, requires the Warden of the penitentiary to see that they are enforced. It is, of course, the duty of these officers to see that statute laws governing the same subject matter—the highest form of regulation except the Constitution—are enforced. And it makes no difference that a breach of the law or regulation may also constitute a felony or misdemeanor, separately punishable as such.

In the Griffin case cited in the margin, the violation of prison rules for which the convict was demerited was an attempt to escape. This also was a crime under the Federal Statute and an indictment was returned against him, which the District Attorney later dismissed. The convict urged this latter fact as disproof of the administrative finding, but the U. S. Circuit Court of Appeals held the Government may have dismissed the criminal charge for some other reason than want of guilt. This ruling certainly shows a court conviction of the

---

*50 C. J., sec. 47, p. 348; 21 R. C. L., sec. 28, p. 1193; State v. Hunter, 124 Iowa, 569, 574, 100 N. W. 510, 512(5), 104 Am. St. Rep. 361, 365; Miller v. State, 149 Ind. 607, 619, 49 N. E. 894, 897(3), 40 L. R. A. 109, 113(3); People v. Conson, 72 Cal. 509, 511(2), 237 Pac. 799; Ex parte Taylor, 216 Cal. 113, 116, 13 Pac. (2d) 906, 907(4)); Ex parte Farve, 64 Okla. Cr. App. 326, 330, 79 Pac. (2d) 1034, 1036(4); Griffin v. Zerbst, 83 Fed. (2d) 805, 806(1).

criminal charge was not necessary to *support* the administrative finding. And in the instant case the petitioner admits that he escaped from the sawmill camp. Further, even though petitioner had been tried and acquitted on a criminal charge of escaping prison in violation of Sec. 4307, it would not preclude a contrary finding by the prison authorities. It was so held in an analagous situation in In re Richards, 333 Mo. 907, 919, et seq., 63 S. W. (2d) 672, 678(10), which was a disciplinary proceeding *sui generis* to disbar an attorney for misconduct involved in a criminal charge of which he had been acquitted.

The fourth and final contention of the petitioner is that even though Sec. 4307 be regarded as a law of the penitentiary, it nevertheless must be treated as in the nature of a rule or regulation, so far as concerns the three-fourths rule enacted by Sec. 9086, and therefore printed copies of both statutes should have been posted in the prison, as required by Sec. 9041. This assignment has given us some concern. The evidence in the cause was heard on February 25, and an order entered quashing the writ and remanding the petitioner, "opinion to follow." At the time of the hearing the petitioner had not filed a denial of the return, but on March 20 did mail in a "Reply to Return," raising for the first time this new issue of fact about the failure to post printed copies of the statutes and rules, mingled with legal suggestions in support of his denial and in opposition to the return. This document was filed without leave, so far as our records show, but we are not refusing to take cognizance of it for that reason. However we cannot permit the petitioner to introduce this new issue of fact nearly a month after the evidence was heard.

But in the interest of justice we will say we think Sec. 9041 requires only the posting of printed copies of the orders, rules and regulations adopted by the Commission of the Department of Penal Institutions and of Sec. 9086, as specified in the section. It does not mention Sec. 4307, which is a general statute. Ignorance of the law would not excuse its violation. [16 C. J., sec. 52, p. 84.] In rare instances the posting of a general statute is required by law, as in the above instance with reference to Sec. 9086, and also with reference to innkeepers, bakeries, gaming table keepers, etc. But a failure to post it ordinarily does not make it any the less binding. The petitioner in this case does not claim he was ignorant of Sec. 4307; and certainly he could not have failed to realize escape from the sawmill camp was a breach of prison discipline. However, if it be true, as petitioner alleges, that the Commission of the Department of Penal Institutions has failed to comply with Sec. 9041 by posting copies of all rules, statutes and other laws deemed by it to come within the provisions of Sec. 9086, technical as well as meritorious contentions would be eliminated by so doing, and actual notice would be brought home to all concerned.

For the reasons stated, and as heretofore announced by the order entered February 25, our writ of *habeas corpus* is quashed and the petitioner remanded to the custody of the Warden and the Commission of the Department of Penal Institutions. All concur.