439 P.2d 298

The STATE of Arizona, Appellee,

v.

Grady MORRIS, Appellant.

No. 2 CA–CR 107.

Court of Appeals of Arizona.

April 3, 1968.

Review Denied May 23, 1968.

**327**

Herbert E. Williams, Tucson, for appellant.

Darrell F. Smith, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

KRUCKER, Judge.

The defendant, Grady Morris, was convicted in the superior court of Pinal County on an information filed in that court on or about the 12th day of January, 1966, charging him with escape from the Arizona State Prison, a felony, in violation of A.R.S. § 13–392.[1] The charging part of the information reads as follows:

"That the said GRADY MORRIS on or about the 15th day of October, 1965, and before the filing of this Information, at and in the County and State aforesaid, did then and there while a prisoner (Inmate No. 26055) confined or incarcerated in the Arizona State Prison for a term of less than life imprisonment, escape from the Arizona State Prison."

Defendant was duly tried and convicted; judgment, sentence and commitment being entered on the 10th day of April, 1967, sentencing the defendant to a term of not less than one year and not more than two years to commence at the expiration of the present sentence.

The facts briefly stated are as follows. On the 15th day of October, 1965, while the defendant was serving his prison term, he was assigned to the work gang on what is known as the "New Ranch", which is a farm operated by the Arizona State Prison where prisoners are assigned to work.

After lunch on the day in question, at about 1:45 p. m., the work gang, including the defendant, was checked out of the prison in the custody of two armed guards and went to the farm to perform the afternoon's work under the direction of the armed guards. Shortly after starting to work, it

1. "§ 13–392. Escape or attempt to escape from penitentiary; punishment; commencement of term of imprisonment
"A prisoner confined in the state prison for a term less than life, who escapes or attempts to escape from the prison, is guilty of a felony, and his term of imprisonment for such felony shall commence at the time when he would otherwise have been discharged from the prison."

was ascertained that the defendant and two other prisoners were missing, and after giving the alarm by radio, numerous people went in search of the prisoners. They were apprehended and returned to the prison in a short time.

Appropriate parts of the testimony regarding the farm are as follows:

"Q. And where did you take, you and the other man take, the crew?

A. Oh, we took them to the New ranch. That's east of the prison there, northeast of the prison.

Q. Approximately where is the New ranch?

A. Oh, it's about five or six miles east of the prison.

Q. Is this a farm?

A. It is.

Q. Who does the farming on the New ranch?

A. Oh, you mean who is in charge of the farming?

Q. No. Who does the farm labor?

A. Whose farm is it?

Q. Yes.

A. It belongs to the state prison.

Q. Is it part of the Arizona State Prison?

A. It sure is."

\*    \*    \*    \*    \*    \*

"Q. This New ranch is located where?

A. It's located approximately a little over four miles east of the prison.

Q. Is this part of the prison?

A. Yes, sir, it is.

\*    \*    \*    \*    \*    \*

Q. Captain, who owns the New ranch?

A. The New ranch is owned by the Arizona State Prison and is under the complete management of the warden of the Arizona State Prison."

The sole question presented to this court is whether escape from a work gang on the prison farm is an escape from the state prison as set forth in § 13–392. Defendant contends that the escape from the prison farm while working on a work gang under guard is not an escape from the prison and that A.R.S. § 13–395 [2] was enacted after the escape to correct the situation. Defendant relies upon Goodman v. State, 96 Ariz. 139, 393 P.2d 148 (1964); and State v. Adams, 4 Ariz.App. 298, 419 P.2d 739 (1966), (Review denied, 1967). In the *Goodman* case, dealing with escape

2. Subsequent to the commission of the alleged escape, the Arizona Legislature added Law 1967, ch. 63 § 2, which was enacted as A.R.S. § 13–395:

"§ 13–395. Escape or attempt to escape from custody while being conveyed or while at place outside or away from prison; punishment; commencement of term of imprisonment

"Every prisoner committed to the state prison who escapes or attempts to escape while being conveyed to or from such prison or any prison road camp, prison forestry camp, or other prison camp or prison farm or any other place while under the custody of prison officials, officers or employees, or while under the custody of any law enforcement officer, or who escapes or attempts to escape from any prison road camp, prison forestry camp, or other prison camp or prison farm or other place while under the custody of prison officials, officers or employees, or who escapes or attempts to escape while at work outside or away from prison under custody of prison officials, officers, or employees, or while under the custody of any law enforcement officer is guilty of a felony punishable by imprisonment in the state prison for a term of not less than one year nor more than five years, and on conviction thereof the term of imprisonment therefor shall commence from the time such prisoner would otherwise have been discharged from the prison."

from the county jail under the provision of A.R.S. § 13–393, our Supreme Court held that escape from the county hospital was not escape from the county jail. We believe that the *Goodman* decision is inapplicable to the present case. The essence of that decision was that the county hospital was clearly separate and apart from the county jail both administratively and geographically and that a person in the county hospital could not be convicted of escape from the county jail under A.R.S. § 13–393. The Supreme Court evidently felt A.R.S. § 13–392 to be broader and more encompassing for they stated:

> "Here the reference is to 'county jail', a much more definite term, and is used in contrast to 'state prison' in A.R.S. § 13–392, which punishes escapes from that institution." Goodman v. State, supra.

We find pertinent language in State ex rel. Johnson v. Warden of the Maryland Penitentiary, 196 Md. 672, 75 A.2d 843 (1950), where, deciding on similar facts, the court there stated:

> There can be no doubt that the applicant was legally confined in the Reformatory at the time of his escape. The mere fact that he was allowed to work outside on a farm in the daytime does not change the nature of his detention or confinement, and escape from the farm had no legal significance different from an escape from the Reformatory itself.

See also, Ex parte Rody, 348 Mo. 1, 152 S.W.2d 657 (1941) holding that a prisoner is "constructively" confined to a prison while outside under guard.

■ This court has recently held that escape from a road gang was sufficient to warrant a conviction for escape under this statute. State v. Kerr, 4 Ariz.App. 335, 420 P.2d 297 (1966). Defendant contends that the enactment of A.R.S. § 13–395 with its specific enumeration of " * * * prison road camp, prison forestry camp, or other prison camp or prison farm * * *"

signifies a legislative intent that these places were not covered in A.R.S. § 13–392. We think otherwise. The language found in A.R.S. § 13–392 comes down virtually unchanged from Revised Statutes of Ariz. 1901, Penal Code, § 105, except that the "escape" statute and the "attempt to escape" statute were combined in § 4539 of the Revised Code of 1928. That the broader statute was enacted on the heels of the narrow judicial construction in *Goodman* supra, indicates to us the intent of the legislature that such escapes as in the instant case not go unpunished. We think § 13–395 impliedly amended § 13–392 and removed from it the crimes of escape from places other than within the confines of the walls of the state prison itself, so that now the two statutes cover together what was covered by § 13–392 alone prior to the enactment of § 13–395. It is proper to imply an amendment where the intent of the legislature is clear from a reading of the two statutes together, and where they are so inconsistent that they cannot be read together as covering the same acts, or, in this case, crimes. See State v. Scott, 237 Or. 390, 390 P.2d 328 (1964); Fiscal Court of Jefferson County v. City of Anchorage, 393 S.W.2d 608 (Ky.1965). In the future, escapes from custody will be properly charged as violations of § 13–395 if they were in the locations enumerated therein.

■ The defendant was properly charged in the information and the conviction must stand.

Judgment affirmed.

MOLLOY, J., and ALICE TRUMAN, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge ALICE TRUMAN was called to sit in his stead and participate in the determination of this decision.