673 P.2d 325

**ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER, an Arizona corporation, Plaintiff-Appellee,**

v.

**MARICOPA COUNTY, Arizona, a body politic, Defendant-Appellant,**

No. 1 CA–CIV 5969.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 4, 1983.

Gammage & Burnham by Richard B. Burnham, Phoenix, for plaintiff-appellee.

Tom Collins, Maricopa County Atty. by Gordon J. Goodnow, Jr., Deputy County Atty., Phoenix, for defendant-appellant.

## OPINION

KLEINSCHMIDT, Judge.

St. Joseph's Hospital sued Maricopa County to recover for the care of two indigent patients who had been hospitalized for emergency treatment at St. Joseph's. The trial court granted the hospital's motion for summary judgment and the county appeals.

Most of the facts, and all of the material facts, are undisputed. On April 13, 1978, Howard Allen, III, a minor, was injured and was first transported to Maryvale Samaritan Hospital by police car and later to St. Joseph's Hospital by ambulance. When he was admitted to St. Joseph's he was not an indigent qualified for care at county expense as defined by A.R.S. § 11–297 and Ariz.Admin.Comp.R. 6–3–1213 (1976).

St. Joseph's took the position that Allen became indigent by reason of the hospital bill he incurred and it thereafter notified the county hospital pursuant to A.R.S. § 11–297.01 of the location and condition of the patient. The first such notification was given on April 19, 1978. At that time Allen was not medically transferable. On May 18, 1978, St. Joseph's again notified the county of Allen's location and condition and the county was advised that he would be medically transferable within one to five days of that date. Allen's parents had initially refused to consent to a transfer to county hospital but, according to St. Joseph's version, the county was notified that they had changed their minds and consent-

ed as of May 18, 1978. There is some dispute over this but the county concedes that it was aware that consent had been given as of May 30, 1978.[1] Allen was not actually transferred to county hospital until June 8, 1978.

The other patient, Jesus Morales, was injured and hospitalized on November 20, 1978, taken to Desert Samaritan Hospital and then transferred by ambulance to St. Joseph's. He was indigent at the time of admission and Maricopa County paid St. Joseph's $14,016.41 for Morales' treatment at the rate allowed under federal medical assistance programs, the so-called Medicare/Medicaid rate.

■ St. Joseph's Hospital sued Maricopa County to recover reimbursement at the full rate for care rendered to both Allen and Morales. The trial court granted St. Joseph's Motion for Partial Summary Judgment and denied Maricopa County's Cross-Motion for Partial Summary Judgment.[2] The history of the issues raised in the trial court and the matters presented on appeal is quite confusing. We think it is sufficient to say that by reason of the county having abandoned one argument[3] and the fact that our decision in another case[4] involving these parties decided after the briefs herein were filed renders some issues moot. The only issues remaining for decision are: (1) whether the initial failure of Allen's parents to consent to his transfer effects the county's liability to reimburse the hospital and (2) whether the hospital is entitled to reimbursement at the full billed rate for care provided to Allen and Morales.

## CONSENT TO TRANSFER

The county, in its brief, takes the position that because once Allen had become indigent his parents initially refused to consent to a transfer from St. Joseph's to county hospital that it was relieved of its responsi-

1. The source of the dispute as to when the county was first notified of consent is obscure. An affidavit of a St. Joseph's employee says consent was given and the county notified as of May 18. The county, citing the same affidavit, simply asserts in its brief that it first received notice of consent on May 30.

2. The trial judge relied on collateral estoppel in granting judgment for St. Joseph's on the issues of the rate at which the hospital was to be reimbursed, the status of Allen as an indigent and the measure of recovery for one who becomes indigent as a result of accruing hospital bills. He did this on the basis of rulings in other cases between these parties that were pending on appeal when the motions in this case became of issue. The county addressed the propriety of applying the doctrine of collateral estoppel in its opening brief. Subsequent decisions on appeal appear to have rendered the matter moot and the parties did not address the question on oral argument.

3. The county originally took the position, based on its interpretation of A.R.S. § 41-1837(A), that *no* reimbursement would be paid for *any* patient who arrived at a private hospital other than by a licensed ambulance. It has since abandoned this position and suggests that we need not address it. St. Joseph's has asked us to do so and we believe that a brief discussion of the issue is merited. The statute read:

> When an indigent emergency medical patient is received by an emergency receiving facility from a licensed ambulance, the county shall be liable pursuant to § 11-297.01 to the ambulance service for the cost of transporting the patient and to the facility for the reasonable costs of all medical services rendered to such indigent by the facility until such patient is transferred by the county to the county hospital, or some other facility designated by the county.

We believe that the reference to the receipt of a patient from a licensed ambulance service was simply a predicate to the allowance of reimbursement to the ambulance service and was never intended as a prerequisite to any reimbursement for services rendered by an emergency receiving facility. While the statute may not have been clearly worded we reject the idea that the legislature could have intended a result as absurd as that for which the county once contended. Our conclusion is supported by the fact that the 1978 amendment deletes any reference to receipt by ambulance from the definition of "emergency medical patient", an amendment we assume was inspired by the county's onetime policy of refusing payment unless emergency patients arrived by ambulance.

4. See *St. Joseph's Hospital & Medical Center v. Maricopa County*, 130 Ariz. 239, 635 P.2d 527 (App.1981), which held that the county is liable for care of a patient who becomes indigent by reason of the cost of his hospital bill and which rejected appellant's arguments to the effect that payment at less than the full billed rate was unconstitutional.

bility to reimburse St. Joseph's. At the very least, it argues that it should not be responsible for expenses incurred at St. Joseph's for any period during which Allen's parents withheld consent.

■ Arizona Revised Statutes § 11–297.01(B)(2) provides that if the county has been notified of the condition and location of an indigent patient who is medically transferable and it does not move such patient within 12 hours it is liable for payment of all costs retroactive to the inception of treatment. This statute applies, notwithstanding the county's argument that it should not have to pay for hospitalization rendered between the time consent was first refused and the date of transfer. What the county has never shown is what effect the initial refusal of consent to transfer had upon the county's ultimate failure to transfer Allen within 12 hours of the May 30 notification of transferability and consent.

Analyzed another way, if St. Joseph's version of events were accepted Allen became medically transferable on or about May 18 and by that time his parents had given consent and the county had been notified. Lack of consent could not have been the cause of a failure to transfer because consent had been given. On the other hand, if Allen had become medically transferable on or about May 18, and if the county first received notice of consent on May 30, the lack of consent arguably delayed the transfer for 12 days. If that were the end of the matter we agree that the county should not have to pay for the period during which lack of consent prevented Allen's transfer.[5] But that is not the end of the matter. Allen was not transferred until June 8, 1978, over a week after the county had received notice of the consent to transfer. No explanation for this delay is offered and we do not believe, under all the circumstances, that it can be said that the failure of Allen's parents to consent is the factor that kept Allen at St. Joseph's be-

tween May 18 and June 8. Accordingly, the county should reimburse St. Joseph's for Allen's cost of care from the time he became indigent until June 8, 1978.

### RATE OF REIMBURSEMENT

■ Since *St. Joseph's Hospital & Medical Center v. Maricopa County, supra,* held that there was no constitutional impediment to reimbursement at less than the full billed rate it only remains for us to decide at what rate the legislature intended the counties to reimburse hospitals for care rendered to indigents received as emergency patients. The only viable claim for reimbursement at the higher rate depends upon a statutory amendment that postdates the termination of Allen's care at St. Joseph's. Accordingly, the hospital is only entitled to be reimbursed for care rendered to Allen at the Medicare/Medicaid rate from the date he became indigent.

Since Morales became a patient after the statute was amended we must address the question. To understand the respective positions of the parties it is necessary to trace the development of the statutes dealing with emergency medical treatment for indigents. We follow the evolution of the law only to the point in time necessary to decide this case. Some of the provisions continue to undergo amendment. The relevant statutes are as follows:

A.R.S. § 41–1837(A), Laws 1972, ch. 189, § 4, provides:

Financial responsibility for emergency medical services rendered to indigents.

When an indigent emergency medical patient is received by an emergency receiving facility from a licensed ambulance, the county shall be liable pursuant to Section 11–297.01, to the ambulance service for the cost of transporting the patient and to the facility for the reasonable costs of all medical services rendered to such indigent by the facility until such patient is transferred by the county to

---

5. A.R.S. § 36–2909(C) relieves the county of liability for reimbursement for periods during which consent to transfer is withheld. Effec- tive in 1981, it would not apply directly to the events that give rise to this action. It is nonetheless sound policy.

the county hospital, or some other facility designated by the county.

A.R.S. § 11–297.01, Laws 1968, ch. 125, § 2, provides as follows:

Care at private or university hospital.

A. An indigent patient qualified for care under the terms of this article may be placed in a private hospital or hospital operated by a university:

1. When the county does not maintain a county hospital.

2. When the county hospital is too overcrowded to accommodate the patient.

3. When the patient requires a service provided by a private hospital or hospital operated by a university that is not provided by the county hospital.

B. The county shall be liable for payment of all costs retroactive to the inception of treatment incurred by a private hospital or hospital operated by a university arising from emergency treatment and medical care administered at such hospital for a patient qualified for such care and treatment under the provisions of this article:

1. When the emergent condition of the patient is such that it is deemed medically inadvisable to transport the patient from the private hospital or hospital operated by a university for further treatment.

2. When the county does not move the patient from the private hospital or hospital operated by a university within twelve hours after being notified by the private hospital or hospital operated by a university authorities of the location and condition of the patient.

C. The cost of hospital care and treatment at such private hospital or hospital operated by a university under the provisions of this section shall be a county charge payable by the county in which the patient maintains his residence to the private hospital or hospital operated by a university at a rate determined by the same method used for reimbursing pro-

viders of services under federal medical assistance programs or at such lower rate as the county and the private hospital or hospital operated by a university may agree upon.

A.R.S. § 41–1831(9), Laws 1972, ch. 189, § 4 originally provided:

"Emergency medical patient" means a person who is suffering from a condition which requires immediate medical care or hospitalization or both in order to preserve the person's health, life or limb and who is being transported by a licensed ambulance, whether such person is being transported pursuant to a call from a city, county, state or municipal agency or otherwise.

This was amended and renumbered to read: [6]

10. "Emergency medical patient" means a person who is suffering from a condition which requires immediate medical care or hospitalization or both in order to preserve the person's health, life or limb.

The reference to arrival by ambulance was deleted.

Subparagraph 10 of the same statute originally provided:

"Emergency medical services" means those services required following an accident or an emergency medical situation:

(a) For on-site emergency medical care.

(b) For the transportation of the sick or injured by a licensed ground or air ambulance.

(c) In the use of emergency communications media.

(d) In the use of emergency receiving facilities.

(e) In administering initial care and preliminary treatment procedures by certified emergency medical services personnel.

This provision was deleted entirely by the amendment.

Subparagraph 13 of the same provision originally provided:

6. Unless otherwise stated, all amendments were made pursuant to Laws 1978, ch. 205

(effective September 3, 1978).

**132**

"Emergency receiving facility" means a licensed health care institution designated as such by the director and equipped and staffed as the director may require by rules and regulations.

This was amended to read:

"Emergency receiving facility" or "emergency room" means a licensed health care institution offering emergency medical services, staffed twenty-four hours a day and which has a physician, licensed under the provisions of title 32, chapter 13 or 17, on call.

Subparagraph 15 of the same provision originally provided:

"Reasonable costs of medical services" means at a rate determined by the same method used for reimbursing providers of services under federal medical assistance programs or at such lower rate as the county and the private hospital or hospital operated by a university may agree upon.

This was amended and renumbered to read:

14. "Reasonable cost of medical services" means at a rate not to exceed rates filed with the department of health services pursuant to Section 36–436 or, in the case of ambulance services, authorized by the Arizona corporation commission.

This latter provision calls for reimbursement at the so-called "full billed rate" as opposed to its predecessor which allowed reimbursement at the Medicare/Medicaid rate.

■ The county argues that St. Joseph's is not entitled to reimbursement at the full billed rate for the patient Morales because he had first been taken to Samaritan Health Services emergency receiving facility before being transferred to St. Joseph's Hospital by a licensed ambulance. The county contends that such secondary arrival by ambulance was not intended by the legislature to qualify for reimbursement under A.R.S. § 41–1837 at the full billed rate. This argument ignores the fact that Morales was received under emergency conditions. The county goes on to argue, however, that A.R.S. § 41–1837 applies only to services rendered at an emergency room or

services which can be classified as initial emergency medical services. The words of the statute simply will not support this argument.

Following the amendment effective September 3, 1978, to A.R.S. § 41–1831, an emergency receiving facility was defined as a health care institution offering emergency medical services. St. Joseph's Hospital clearly qualified under this definition and there is absolutely nothing in the statute that distinguishes between initial emergency services rendered and long term inpatient care rendered to a person initially received as an emergency patient who is not medically transferable.

The county argues that even though A.R.S. § 41–1837 was amended to allow payment at the full billed rate it still incorporates A.R.S. § 11–297.01 by reference and the latter statute has never been amended to allow reimbursement at anything other than the Medicare/Medicaid rate. While the county acknowledges that these provisions are conflicting it says that the failure to amend § 11–297.01 is evidence that the legislature never intended to reimburse hospitals for patients like Morales at the higher rate. It suggests that the statutes can be harmonized if Title 41 is read as focusing on treatment in emergency rooms and ambulances and Title 11 is read as focusing on treatment of longer duration.

■ We are aware that the repeal of statutes by implication is not favored and that the courts should harmonize apparent conflicts in statutory provisions if possible. We have attempted to do so in this case but we cannot. On the other hand, where it appears by reason of repugnancy or inconsistency in the provisions of statutes that the two statutes cannot operate contemporaneously it must be implied that the legislature intended to repeal the earlier enactment. *State v. Morf,* 80 Ariz. 220, 223, 295 P.2d 842, 843 (1956). *See also State ex rel. Purcell v. Superior Court,* 107 Ariz. 224, 485 P.2d 549 (1971); *Arizona Tax Commission v. Dairy Consumers Cooperative Association,*

70 Ariz. 7, 215 P.2d 235 (1950); *State v. Morris,* 7 Ariz.App. 326, 439 P.2d 298 (1968).

■ The county's argument that payment at the full billed rate is to be allowed only for *initial* emergency services relies too heavily upon imagination. The statutes do not say that. The definition of emergency receiving facility is not confined to initial treatment facilities or emergency rooms. Of course, Title 41, which deals only with emergency medical treatment, has no application to the other provisions of Title 11. Thus where a county does not maintain its own hospital or where a county hospital is too overcrowded to accommodate a patient, or where a patient requires a service provided by a private hospital that is not provided by a county hospital, a private hospital receiving such a patient (other than under emergency conditions) is entitled to reimbursement only at the Medicare/Medicaid rate.

We see a rational purpose in such a construction of the statutes. Allowing reimbursement at the full billed rate for emergency patients encourages private hospitals to accept such patients without inquiry into their financial status and discourages transfer of emergency patients whose medical condition might be jeopardized by premature transfer. *See* and *compare Thompson v. Sun City Community Hospital,* 1 CA–CIV 5442 (Ariz.App. March 29, 1983), *review granted,* No. 16634–PR (Ariz.Sup.Ct. June 23, 1983).

Based on the foregoing the judgment of the trial court is affirmed as to the reimbursement allowed on behalf of the patient Morales and reversed with respect to the amount of reimbursement allowed on behalf of the patient Allen. This cause is remanded to the trial court to determine the amount due on behalf of Allen from the time he became indigent to the date of his transfer—the same to be allowed at the Medicare/Medicaid rate.

CONTRERAS and CORCORAN, JJ., concur.