26 P.3d 510

UNUM LIFE INSURANCE COMPANY
OF AMERICA, Plaintiff,

v.

Kenneth E. CRAIG, as personal represen-
tative of the Estate of William J. and
Micah Craig, deceased; Kathleen Burr,
as personal representative of the Estate
of Diane Craig, et al., Defendants.

Prudential Insurance Company
of America, Plaintiff,

v.

Kenneth E. Craig, as personal representa-
tive of the Estate of William J. and Mi-
cah Craig, deceased; Kathleen Burr, as
personal representative of the Estate of
Diane Craig, et al., Defendants.

No. CV–00–0184–CQ.

Supreme Court of Arizona,
En Banc.

July 17, 2001.

Jardine Baker Hickman & Houston PLLC by Gerald T. Hickman, Phoenix, Attorneys for Plaintiff UNUM Life Insurance Company of America.

W. Lloyd Benner, Phoenix, Attorney for Defendants Burr/Pirie.

Randall L. Hodgkinson, Topeka, KS, Stephen M. Lee, Kingman, Attorney for Defendants Kenneth E. Craig, Personal representative of the Estate of William J. and Micah Craig and Chanda Craig.

## OPINION

JONES, Vice Chief Justice.

### I. Introduction

¶ 1 This is an interpleader action involving life insurance proceeds. The case comes to us as a certified question from the United States District Court for the District of Arizona. The question is which of two conflicting statutes, A.R.S. § 14–2702 or § 20–1127, articulates the applicable rule of survival for a designated beneficiary of an insurance policy? We accepted jurisdiction pursuant to Arizona Supreme Court Rule 27(d) and A.R.S. § 12–1861 (2001).

### II. The Facts

¶ 2 William J. Craig ("William"), his wife Diane R. Craig ("Diane"), and William's son by a prior marriage, Micah, were involved in a head-on automobile collision near Prescott, Arizona. An off-duty police officer witnessed the accident and attempted to assist the victims at the scene. When the officer approached the Craig automobile, he was unable to detect any pulse or respiration from William, but heard gurgling and moaning noises from Diane. The officer spent ten to twenty minutes away from the Craig vehicle assisting other victims and directing traffic. When the officer returned to the Craig vehicle, he found that Diane no longer showed signs of life. The Yavapai County Medical Examiner, who examined the bodies the following day, indicated that both William and Diane died at the same time, 3:35 p.m., on February 27, 1999. William's son Micah also died in the accident, leaving William's daughter, Chanda Craig, also by the prior marriage, as his sole surviving child.

¶ 3 Before his death, William purchased a $490,000 accidental death and dismemberment policy from UNUM Life Insurance Company. He was also an insured member under a $177,000 group life insurance policy from Prudential Insurance Company.[1] William designated Diane as the beneficiary on both policies, but did not designate an alternate beneficiary on either. Each insurance company admitted coverage on its policy. Both policies provided that the proceeds should be paid in the following order: (1) to the designated beneficiary or alternate; (2) to William's spouse/widow; or (3) to William's child or children.

¶ 4 Diane's estate[2] argues it is entitled to the insurance proceeds under a provision of the Arizona Insurance Code, A.R.S. § 20–1127. William's estate[3] argues it is entitled

---

1. This opinion treats William's accident and life policies both as policies of life insurance. The rule we announce applies equally to both.

2. The estate of Diane R. Craig includes Kathleen Burr as personal representative for Diane Craig's Estate and Legal Guardian of Kyle Craig Leviton. The estate also includes Joseph Pirie as Legal Guardian for Jessica Pirie. These two minor children are Diane's by a prior marriage.

3. "Williams' estate" refers to the Estate of William J. and Micah Craig and Chanda Craig. Chanda is William's sole surviving child.

to the insurance proceeds under a provision of the Arizona Probate Code, A.R.S. § 14–2702.

¶ 5 The insurance companies filed this interpleader action, and the district court certified the relevant question of Arizona law to this court.

## III. Analysis

 ¶ 6 Both potentially applicable statutes, although contained in separate titles of the code, are modeled after the Uniform Simultaneous Death Act ("USDA"). The USDA is a uniform statute originally drafted to apply in circumstances resulting in multiple related deaths where it is not possible to determine the order in which the deaths occurred. UNIF. SIMULTANEOUS DEATH ACT § 5, prefatory note (amended 1953, superseded 1991), 8B U.L.A. 268–69 (1993).

¶ 7 The first, A.R.S. § 20–1127, appears in Title 20 of the code, which is titled "Insurance." The second, A.R.S. § 14–2702, is included in Title 14, which is titled "Trusts, Estates and Protective Proceedings," also referred to as the probate code. Diane's estate contends that because we are dealing with life insurance proceeds, the fact that § 20–1127 is found in the insurance code (Title 20), whereas § 14–2702 is found in the probate code (Title 14), means that § 20–1127 is necessarily the applicable statute. We have stated that courts should be reluctant "to base construction of such important statutes on chapter headings and section titles." *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 250, 866 P.2d 1330, 1336 (1994).

¶ 8 The relevant insurance and probate statutes read as follows:

**A.R.S. § 20–1127: [Insurance]**

Where the individual insured or the annuitant and the beneficiary designated in a life insurance policy or policy insuring against accidental death or in an annuity

---

4. We note at the outset that A.R.S. § 20–1127 was enacted in 1954 and has not been amended since.

5. Subsection D provides that the survival requirements do not apply if the governing instrument "contains language that deals explicitly with simultaneous deaths or deaths in a common

---

contract have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy or contract shall be distributed as if the insured or annuitant had survived the beneficiary, unless otherwise specifically provided in the policy or contract.

A.R.S. § 20–1127 (1990).[4]

**A.R.S. § 14–2702(B): [Probate]**

Except as provided in subsection D of this section, for purposes of a provision of a governing instrument that relates to a person surviving an event, including the death of another person, a person who is not established by clear and convincing evidence to have survived the event by one hundred twenty hours is deemed to have predeceased the event.

A.R.S. § 14–2702(B) (1995).[5]

¶ 9 Diane's estate argues that because Diane appeared to survive William, if only by moments, Diane, as the primary beneficiary of the policy, became entitled to the proceeds outside the purview of the probate code. Accordingly, her estate claims the proceeds should be paid to it pursuant to § 20–1127.

¶ 10 William's estate contends that because the probate code includes insurance policies in its definition of governing instruments, the 120–hour survival rule applies and the proceeds should be paid to it pursuant to § 14–2702. "Governing instrument" is defined in Title 14 to include an insurance or annuity policy. A.R.S. § 14–1201(21) (1995).

 ¶ 11 Each statute takes a different approach to survival requirements for a designated beneficiary of a life insurance policy. When two statutes appear to conflict, we will attempt to harmonize their language to give effect to each. *State v. Wagstaff*, 164 Ariz. 485, 491, 794 P.2d 118, 124 (1990) (citing *Powers v. Isley*, 66 Ariz. 94, 100, 183 P.2d 880, 884 (1947)). The primary aim of statutory construction is to find and give effect to

---

disaster" or "expressly indicates that a person is not required to survive an event, including the death of another person, by any specified period or expressly requires the person to survive the event by a specified period." A.R.S. § 14–2702(D)(1), (2) (1995). The policy at issue had no such provisions.

legislative intent. *Mail Boxes etc., U.S.A. v. Indus. Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995).

 ¶ 12 If a statute is clear and unambiguous, we generally apply it without using other means of construction. When an ambiguity or contradiction exists, however, we attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider "the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Aros v. Beneficial Ariz., Inc.,* 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999) (internal citations omitted) (quoting *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996)). If neither the statute's text nor the statement of legislative intent resolves the exact issue before us, "we must resolve any ambiguity by considering the legislature's overall purposes and goals in enacting the body of legislation in question." *Id.* at 66, 977 P.2d at 788 (internal citations omitted) (quoting *Ariz. Life & Disability Ins. Guar. Fund v. Honeywell, Inc.,* 190 Ariz. 84, 87, 945 P.2d 805, 808 (1997)).

¶ 13 While the separate texts of these statutes now differ significantly, that has not always been true. In the mid–1950s, the life insurance survivorship provision contained in the insurance code (A.R.S. § 20–1127) was virtually identical to that in the probate code (A.R.S. § 14–225, subsequently renumbered as § 14–2808). Because of current differences between the two, we must address and resolve the conflict. We do that by examining the legislative history of each statute.

## A. Legislative History

¶ 14 In 1940, the National Conference of Commissioners on Uniform State Laws promulgated the USDA. The original USDA provided:

> Where the insured and the beneficiary in a policy of life or accident insurance have died and there is no sufficient evidence that they have died otherwise than simultaneously the proceeds of the policy shall be distributed as if the insured had survived the beneficiary.

Unif. Simultaneous Death Act § 5 (amended 1953, superseded 1993), 8B U.L.A. 289–90 (1993).[6] The Arizona Legislature adopted the USDA on two separate occasions, in separate titles of the Arizona Revised Statutes, in the 1950s.

¶ 15 The 1940 version was the source of A.R.S. § 20–1127, which was passed by the legislature in 1954 as part of a newly enacted insurance code. *See* S.B. No. 1, 1954 Ariz. Sess. Laws, ch. 64, art. 11, § 27. The language of Arizona's § 20–1127 mirrored the USDA with only minor word changes not relevant to the present controversy.[7]

¶ 16 In 1953 the drafters of the USDA amended the Act in small detail to include a provision concerning community property. In 1959 the Arizona Legislature enacted the amended USDA as part of Title 14 in A.R.S. § 14–2808.[8] *See* S.B. No. 101, 1959 Ariz. Sess. Laws, ch. 77, § 1. Although the enactment of § 14–2808 was essentially a recodification in the probate code of the subject matter already enacted in the insurance code by § 20–1127, the legislature did not repeal § 20–1127. In fact, since its enactment in 1954, § 20–1127 has never been modified. All subsequent changes to the original USDA in the Arizona Revised Statutes have been made to Arizona's probate code, *i.e.,* the version of the USDA included in Title 14.

---

6. Originally Unif. Simultaneous Death Act § 4. Renumbered as § 5 in 1953.

7. Where the individual insured or the annuitant and the beneficiary designated in a life insurance policy or policy insuring against accidental death or in an annuity contract have died and there is not sufficient evidence that they have died otherwise than simultaneously, the proceeds of the policy or contract shall be distributed as if the insured or annuitant had survived the beneficiary, unless otherwise specifically provided in the policy or contract.

Ariz.Code § 61–2327 (Supp.1954) (now codified at A.R.S. § 20–1127).

8. Section 14–2808 was originally added as § 14–225 by Laws 1959, ch. 77, § 1, effective June 20, 1959. It was subsequently renumbered as § 14–2808 and amended by Laws 1973, ch. 75, §§ 15, 16, effective Jan. 1, 1974. Section 14–2808 was later repealed by Laws 1994, ch. 290, § 5, effective Jan. 1, 1995. The language regarding community property added to the USDA in 1953 and adopted by Arizona in 1959 is not relevant to this controversy.

¶ 17 In 1969, years after the original USDA was introduced, the Uniform Law Commissioners drafted the original Uniform Probate Code ("UPC"), which included a new and different approach to the simultaneous or near-simultaneous death problem. By then, the drafters of the UPC saw the USDA as "only a partial solution" to the simultaneous death problem "since it applies only if there is *no* proof that the parties died otherwise than simultaneously." UNIF. PROBATE CODE § 2–104 cmt. (amended 1990), 8 (pt. I) U.L.A. 84 (1998) (emphasis added). The drafters believed that the USDA standard of proof resulted in determinations turning on fortuitous survival by a moment or two, testified to by medical experts using sometimes gruesome medical evidence to support non-simultaneous death claims. *See, e.g., In re Bucci's Will,* 57 Misc.2d 1001, 293 N.Y.S.2d 994 (Surr.Ct.1968) (husband and wife found dead when removed from wreckage of small airplane, which crashed and burned after colliding with a large airplane; existence of carbon monoxide in wife's blood was found sufficient evidence to establish wife's survival of husband, whose skull was fractured and in whose blood no carbon monoxide was found); *In re Estate of Rowley,* 257 Cal.App.2d 324, 65 Cal.Rptr. 139 (1967) (period of claimed survivorship was 1/150,000 of a second); *see also* Edward C. Halbach, Jr. & Lawrence W. Waggoner, *The UPC's New Survivorship and Antilapse Provisions,* 55 ALB. L.REV. 1091, 1095 (1992) ("By the time the Uniform Law Commissioners promulgated the original UPC in 1969 ..., it had become clear that the restriction in the USDA to cases in which there was no sufficient evidence that two individuals died otherwise than simulta-

neously created a problem." (footnote omitted)).

¶ 18 The instant case is illustrative of the concerns of the UPC drafters. Here, William's estate obtained medical testimony to dispute the contention by Diane's estate that Diane survived William. The affidavit includes explanations of brain death, pupillary reflexes, and why the severity of Diane's head injury may suggest that she progressed from "clinical death" to "brain or biological death" more quickly than William. Appellant's Brief, Appendix 9, Affidavit of Dennis A. Baccarro, Ph.D., D.O.

¶ 19 The drafters' solution for the 1969 version of the UPC was to include a 120–hour survival requirement for purposes of the homestead allowance, exempt property, and intestate succession.[9] Thus, unless an individual survived the decedent by 120 hours, the individual would be treated as having predeceased the decedent and the property would pass accordingly. Arizona adopted this provision of the UPC in 1973 as A.R.S. § 14–2104 and later extended application of the rule to wills in A.R.S. § 14–2601.

¶ 20 In 1990, the drafters of the UPC extended the 120–hour rule to any "governing instrument," including wills, deeds, trusts, and insurance policies. *See* UNIF. PROBATE CODE §§ 1–201(19) (revised 1990, amended 1991, 1993, and 1998), 2–701 (amended 1991), 2–702 (amended 1991 and 1993), 8 (pt. I) U.L.A. 35, 181–82 (1998 & Supp.2001). The Arizona Legislature would later incorporate both the 1990 changes to the UPC and changes made in 1993 to the USDA which we describe below.

¶ 21 The USDA was amended in 1991 to include a 120–hour survival requirement for governing instruments.[10] Prior to this time,

---

9. An individual who fails to survive the decedent by 120 hours is deemed to have predeceased the decedent for purposes of homestead allowance, exempt property, and intestate succession, and the decedent's heirs are determined accordingly. If it is not established by clear and convincing evidence that an individual who would otherwise be an heir survived the decedent by 120 hours, it is deemed that the individual failed to survive for the required period. This section is not to be applied if its application would result in a taking of intestate estate by the state under Section 2–105.

Unif. Probate Code § 2–104 (revised 1990), 8 (pt. I) U.L.A. 84 (1998).

10. Except as provided in Section 6, for purposes of a provision of a governing instrument that relates to an individual surviving an event, including the death of another individual, an individual who is not established by clear and convincing evidence to have survived the event by 120 hours is deemed to have predeceased the event.

Unif. Simultaneous Death Act § 3 (amended 1993), 8B U.L.A. 51 (Supp.2000). Section 6 applies only if the governing instrument, con-

the USDA was somewhat restricted in that it only applied to situations in which there was *no sufficient* evidence that two individuals died other than simultaneously. The 1991 version of the USDA extended application of the Act "to situations in which there *is* sufficient evidence that one of the individuals survived the other one, but the period of survival was insubstantial"—less than 120 hours. UNIF. SIMULTANEOUS DEATH ACT prefatory note (amended 1993), 8B U.L.A. 254–55 (1993) (emphasis in original). The addition of a 120–hour requirement to the USDA originated in sections 2–104 and 2–601 of the UPC, which previously imposed a 120–hour requirement of survival for intestate and testate succession, and in the revisions of Article I and II of the Uniform Probate Code that were approved in 1990 and 1991, which extended the 120–hour survival requirement to governing instruments. *Id.*

¶ 22 The USDA was again amended in 1993. The prefatory note to the 1993 amendment made clear that insurance policies were subject to the 120–hour survival requirement by virtue of the language in the section referring to "governing instruments." The drafters commented that the specific section of the original USDA pertaining to insurance policies was "unnecessary and omitted from this version" because "insurance is covered by the general provisions of Section 3." UNIF. SIMULTANEOUS DEATH ACT prefatory note (amended 1993), 8B U.L.A. 38 (Supp.2000). In addition, the prefatory note explicitly identified life insurance policies as subject to the 120–hour rule. *Id.*

¶ 23 In 1994, the Arizona Legislature adopted the 1990 revisions to the UPC, as reflected in the 1993 USDA, and included those provisions in A.R.S. §§ 14–2701 and –2702. *See* Act of April 25, 1994, 1994 Ariz. Sess. Laws, ch. 290, §§ 5–6. The revisions expressly provided for application of the 120–hour survival rule to all situations involving "governing instruments," including insurance policies. *See* A.R.S. §§ 14–2702(B), 14–1201(21). At the same time, the legislature repealed various prior probate code sec-

tions,[11] including A.R.S. § 14–2808, which consisted of language identical to A.R.S. § 20–1127. The legislative history states that the purpose of the change was to "update and revise the probate statutes in order to conform Arizona law with revisions made to the Uniform Probate Code in 1990." *Hearings on H.B. 2536 Before the Senate Judiciary Committee,* 41st Legis., 2d Reg. Sess. (Ariz.1994) (statement of Greg Cygan, Assistant Research Analyst); *see also Gonzalez v. Super. Ct.,* 117 Ariz. 64, 66, 570 P.2d 1077, 1079 (1977) (legislative purpose in adopting bulk of the Uniform Probate Code was to provide for substantial revision of Arizona's probate laws).

¶ 24 We see in this history reasonably clear evidence that the legislature simply overlooked § 20–1127 in 1994 when it adopted the 1993 version of the USDA in A.R.S. §§ 14–2701 and –2702 and repealed § 14–2808, which consisted of language virtually identical to § 20–1127. In plain view of the apparent oversight, it is clear that had the legislature intended to deviate from the revised UPC and exclude insurance policies from the 120–hour rule, the legislature could have done so, either by changing the definition of "governing instrument" in § 14–1201(21) to exclude insurance policies, or by explicitly addressing the UPC's handling of simultaneous deaths when dealing with life insurance policies. The legislature did neither. Instead, the legislature repealed A.R.S. § 14–2808, the probate statute virtually identical to § 20–1127.

¶ 25 Further, when a statute is based on a uniform act, we assume that the legislature "intended to adopt the construction placed on the act by its drafters." *State v. Sanchez,* 174 Ariz. 44, 47, 846 P.2d 857, 860 (App.1993). Commentary to such a uniform act is highly persuasive unless erroneous or contrary to the settled policy of Arizona. *In re Estate of Dobert,* 192 Ariz. 248, 252, 963 P.2d 327, 331 ¶ 17 (App.1998). The basic purpose of the UPC is to simplify and clarify the law concerning the affairs of decedents, to discover and make effective the intent of a

---

trary to the present facts, expressly deals with the issue of simultaneous deaths or does not require survival by a certain period of time.

**11.** A.R.S. §§ 14–2601 through –2809.

decedent in the distribution of his property, and to promote a speedy and efficient system for liquidating the estate of the decedent. UNIF. PROBATE CODE § 1–102(b), 8 (pt. I) U.L.A. 26 (1998); A.R.S. § 14–1102 (2000); *see also In re Estate of Johnson*, 129 Ariz. 307, 311, 630 P.2d 1039, 1043 (1981) (Contreras, J., specially concurring) (basic purpose of UPC is to make effective the intent of the decedent).

¶ 26 Moreover, the drafters of the 1969 UPC desired to resolve simultaneous death cases with a minimum of litigation and without the use of graphic, sometimes gruesome, medical evidence. We conclude that the Arizona Legislature, by enacting the UPC, did not envision a statutory scheme which would require parties to undertake protracted litigation to resolve the disposition of insurance proceeds in a case such as this, especially when the outcome was likely the result of mere fortuity.

¶ 27 In light of this legislative history, the context of the legislation, and the legislative purpose, we find that A.R.S. § 14–2702(B) applies in the case at bar and that the intended repeal of A.R.S. § 20–1127 was left undone by oversight when Arizona's probate code was amended. Because § 14–1201(21) includes insurance policies in its definition of "governing instrument," § 20–1127 serves no purpose. It appears reasonable to conclude, from a review of all the applicable statutes, that § 14–2702 implicitly repealed § 20–1127 by rendering it essentially redundant in application and contrary in result.

**B. Implicit Repeal**

¶ 28 We are aware that implicit repeal of statutes is not favored. *State v. Tarango*, 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996). Rather, when two statutes appear to conflict, whenever possible, we adopt a construction that reconciles one with the other, giving force and meaning to all statutes involved. *Lewis v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996); *see also Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 313, 823 P.2d 1317, 1321 (App.1991) (courts must endeavor to construe statutes to avoid conflict and give effect to each provision).

¶ 29 We have attempted to harmonize the statutes in this case, but we cannot. There are currently in force two statutes governing distribution of insurance proceeds upon simultaneous or near-simultaneous deaths. The one requires survival by 120 hours; the other requires that the beneficiary meet a more subjective standard of proof with complex evidence that the beneficiary survived the insured if only by a few moments. Generally, where it appears by reason of repugnancy, or inconsistency, that two conflicting statutes cannot operate contemporaneously, the "more recent, specific statute governs over [an] older, more general statute." *Lemons v. Super. Ct.*, 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984); *see also St. Joseph's Hosp. & Med. Ctr. v. Maricopa County*, 138 Ariz. 127, 132, 673 P.2d 325, 330 (App.1983) (more recent statute operates as implicit repeal of unavoidably conflicting prior enactment) (citing *State v. Morf*, 80 Ariz. 220, 223, 295 P.2d 842, 843 (1956)). In light of the legislature's express inclusion of insurance policies in § 14–1201(21), both statutes at issue specifically apply to insurance policies. To the extent that § 20–1127 conflicts with § 14–2702, the legislature's latest word on simultaneous deaths, § 14–2702, must prevail.

**C. Insurance Proceeds as Non–Testamentary Assets**

¶ 30 A final point, argued by the parties, is significant. Diane's estate contends that § 14–2702 cannot apply because we are dealing with insurance proceeds. Her estate argues that we should follow the court of appeals decision in *In re Estate of Alarcon*, 149 Ariz. 340, 718 P.2d 993 (App. 1986), *vacated by* 149 Ariz. 336, 718 P.2d 989 (1986), which Diane's estate claims stands for the proposition that insurance proceeds are non-testamentary assets to which Arizona's probate code is inapplicable.

¶ 31 We simply point out that *Alarcon* has been reversed and, accordingly, the language relied on by Diane's estate is no longer valid and has no precedential value in interpreting Arizona's current probate code.

¶ 32 Similarly, we reject the contention of Diane's estate that a related provision, A.R.S. § 14–6101, disallows application of the 120–hour survival requirement to insurance policies. That statute declares that "[a] provision for a nonprobate transfer on death in any insurance policy … is nontestamentary." A.R.S. § 14–6101(A) (1995). Diane's estate would have us conclude that because this statute operates to define insurance policies as nontestamentary, such designation prohibits us from applying any of the provisions in Title 14—the probate code—to insurance policies. This argument is flawed.

¶ 33 Section 14–6101 codified UPC § 6–101. See Act of Apr. 25, 1994, 1994 Ariz. Sess. Laws, ch. 290, § 18. Section 6–101 was drafted to address the treatment of will substitutes such as multiple-party bank accounts, government bonds, employment contracts, or other contractual arrangements intended to transfer property at death. While revocable trusts and beneficiary designations in life insurance policies were usually upheld as acceptable will substitutes, courts treated as testamentary a variety of other contractual arrangements which attempted to dispose of property at death, the result of which was to invalidate certain arrangements because they failed to be executed in accordance with the formalities of the statute of wills.

¶ 34 The drafters of the original UPC commented that they were unable to identify policy reasons for continuing to treat contractual arrangements such as those enumerated above as testamentary. UNIF. PROBATE CODE § 6–101 cmt. (revised 1989, amended 1998), 8 (pt. II) U.L.A. 430–31 (1998). Indeed, many of the contractual arrangements described above are not susceptible to the evils envisioned by a less rigid enforcement of the statute of wills because such contracts are often part of a business transaction and are usually evidenced by a writing. *Id.* Thus, the drafters of § 6–101 sought to prevent "certain dispositions from being struck down solely on account of their 'testamentary' characterization." Grayson M.P. McCouch, *Will Substitutes Under the Revised Uniform Probate Code*, 58 BROOK. L.REV. 1123, 1131 (1993). Significantly, the drafters of § 6–101 stated that "[t]he sole purpose of this section is to prevent the transfers authorized here from being treated as testamentary." UNIF. PROBATE CODE § 6–101 cmt. (revised 1989, amended 1998), 8 (pt. II) U.L.A. 431 (1998).

¶ 35 As noted, commentary to a uniform act is highly persuasive unless erroneous or contrary to the settled policy of Arizona. *In re Estate of Dobert*, 192 Ariz. at 252, 963 P.2d at 331 ¶ 17. Based on the drafters' comments, we conclude that § 14–6101 was intended primarily to confirm that certain types of written will substitutes are nontestamentary and need not comply with will formalities to transfer property at death. This determination however, does not compel the conclusion that the remainder of the probate code is inapplicable to these will substitutes. Title 14 applies both to probate and nonprobate transfers. *See* A.R.S. § 14–1201(21) (defining governing instrument in this title to include wills, insurance policies, and other contractual arrangements deemed nontestamentary by A.R.S. § 14–6101).

¶ 36 Thus, in the absence of contrary intent, the 120–hour survival requirement set forth in Arizona's probate code, § 14–2702, applies with equal force to an insurance policy despite its characterization as nontestamentary. Our conclusion does not go unsupported. *See Janus v. Tarasewicz*, 135 Ill. App.3d 936, 90 Ill.Dec. 599, 482 N.E.2d 418 (1985) (applying Illinois version of USDA contained in Illinois probate code to insurance proceeds); *see also* RESTATEMENT (THIRD) OF PROPERTY § 1.2 cmt. d (1998) ("Under both the Revised UPC and the Revised USDA, the 120 hour requirement of survival applies not only to probate transfers, but also to certain nonprobate transfers taking effect at death, such as life insurance…."); McCouch, *supra*, at 1154 ("The revised 120–hour rule applies to a survival requirement under most will substitutes.").

## IV. Conclusion

¶ 37 A.R.S. § 20–1127 was based on the 1940 provision of the USDA that was intended to direct the passing of property to the most likely beneficiary in cases where related parties died together in a common disaster. In 1940, the USDA was an improvement on

existing law. In the 60 years since the original USDA was drafted, the law regarding simultaneous deaths has continued to evolve in an attempt to avoid the undesirable consequence of inheritance, life insurance, or other assets passing to unintended beneficiaries simply because one person outlived another by a few minutes or even a few seconds. Our legislature has followed that legal evolution by adopting the UPC and its revisions to mitigate such problems. The fact that the legislature, for whatever reason, left on the books an older conflicting statute should not result in the more recent UPC provision being ignored.

¶ 38 We therefore hold that A.R.S. § 14–2702 states the applicable rule of survival for a designated beneficiary of an insurance policy. Under this rule, it would appear that the proceeds of both policies should be paid to William's estate.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, RUTH V. McGREGOR, Justice.