IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

PLANNED PARENTHOOD ARIZONA, INC., SUCCESSOR-IN-INTEREST TO PLANNED PARENTHOOD CENTER OF TUCSON, INC.;
LAURA CONOVER, PIMA COUNTY ATTORNEY,
*Appellants*,

*v.*

MARK BRNOVICH, ATTORNEY GENERAL OF THE STATE OF ARIZONA,
*Appellee*,

*and*

ERIC HAZELRIGG, M.D., AS GUARDIAN AD LITEM OF UNBORN CHILD OF PLAINTIFF JANE ROE AND ALL OTHER UNBORN INFANTS SIMILARLY SITUATED,
*Intervenor.*

No. 2 CA-CV 2022-0116
Filed December 30, 2022

---

Appeal from the Superior Court in Pima County
No. C127867
The Honorable Kellie L. Johnson, Judge

**AFFIRMED IN PART; REVERSED IN PART**

---

COUNSEL

Coppersmith Brockelman PLC, Phoenix
By D. Andrew Gaona

and

Planned Parenthood Federation of America
By Sarah Mac Dougall, Pro Hac Vice, New York, New York and Diana O. Salgado, Pro Hac Vice, Washington, D.C.
*Counsel for Appellant Planned Parenthood Arizona, Inc.*

Laura Conover, Pima County Attorney
By Samuel E. Brown, Chief Civil Deputy County Attorney and Jonathan Pinkney, Deputy County Attorney, Tucson
*Counsel for Appellant Laura Conover, Pima County Attorney*

Mark Brnovich, Arizona Attorney General
By Michael S. Catlett, Linley Wilson, and Katlyn J. Divis, Assistant Attorneys General, Phoenix
*Counsel for Appellee*

Alliance Defending Freedom, Scottsdale
By Mark A. Lippelmann and Kevin H. Theriot
*Counsel for Intervenor*

John J. Jakubczyk, Phoenix
*Counsel for Amicus Curiae Charlotte Lozier Institute*

---

**OPINION**

Chief Judge Vásquez authored the opinion of the Court, in which Judge Swann[1] concurred and Presiding Judge Eckerstrom specially concurred.

---

V Á S Q U E Z, Chief Judge:

**¶1** Dating back to its territorial days, Arizona has had a near-total statutory ban on abortion. But for almost five decades, enforcement of the ban was enjoined, and it was declared unconstitutional as to all persons. This changed on June 24, 2022, when, in *Dobbs v. Jackson Women's Health Organization*, ___ U.S. ___, ___, 142 S. Ct. 2228, 2279 (2022), the United States Supreme Court held there is no constitutional right to abortion. Arizona Attorney General Mark Brnovich then filed a motion for relief from judgment in the trial court, asking it to set aside the permanent injunction prohibiting criminal prosecution under A.R.S. § 13-3603. The court granted

[1]The Hon. Peter B. Swann, a retired judge of this court, is called back to active duty to serve on this case pursuant to orders of this court and the supreme court.

the motion, and Planned Parenthood of Arizona, Inc. (PPAZ) and the Pima County Attorney's Office (PCAO) have challenged the court's order, arguing § 13-3603 should be harmonized with more recent statutes regulating the practice of abortion, codified in Title 36.

**¶2** The question at the core of this appeal is whether a licensed physician who performs an elective abortion in conformity with more recent statutes in Title 36 is nevertheless subject to prosecution under § 13-3603. Because Title 36 permits physicians to perform elective abortions under certain circumstances, the answer is no.

**Factual and Procedural Background**

**¶3** In 1971, the Planned Parenthood Center of Tucson and several physicians challenged the constitutionality of Arizona abortion statutes, including A.R.S. § 13-211, now renumbered as § 13-3603.[2] The Arizona Attorney General and Pima County Attorney were named as defendants. The trial court granted declaratory relief in favor of the plaintiffs and permanently enjoined the defendants from enforcing the statutes. After the Supreme Court decided *Roe v. Wade*, 410 U.S. 113 (1973), we affirmed the injunction but modified it to reflect that "the statutes in question are unconstitutional as to all." *Nelson v. Planned Parenthood of Tucson, Inc.*, 19 Ariz. App. 142, 152 (1973).

**¶4** Since 1973, the Arizona legislature has enacted numerous laws regulating abortion. Most recently, it enacted A.R.S. §§ 36-2321 to 36-2326 (the 15-week law), which places requirements on abortion services by licensed physicians up to fifteen weeks, generally prohibits the abortion of any fetus with a gestational age of fifteen weeks or more, and creates reporting procedures for medically necessary abortions performed by licensed physicians after fifteen weeks. 2022 Ariz. Sess. Laws, ch. 105, §§ 1-5. Currently, Arizona statutes relating to abortion are found in Title 36, *see, e.g.*, A.R.S. §§ 36-2151 to 36-2164, 36-2301 to 36-2326, and A.R.S. §§ 13-3603 to 13-3605.[3] Title 36 includes both criminal and civil sanctions

[2] 1977 Ariz. Sess. Laws, ch. 142, § 99.

[3] Section 13-3603.01 provides for civil and criminal liability for performing partial-birth abortions, while § 13-3603.02 provides penalties for providing abortion for certain prohibited reasons such as sex or race selection. Section 13-3605 creates criminal liability for, among other things, advertising for abortion. These statutes are not at issue in this appeal.

for violations of the regulatory scheme, while § 13-3603 broadly prohibits and criminalizes abortion, except to save the life of the pregnant woman.

**¶5** In June 2022, the Supreme Court overruled *Roe* in *Dobbs*. Brnovich then sought relief under Rule 60(b)(5) and (6), Ariz. R. Civ. P., from the injunction, asking the trial court to set it aside "as applied to A.R.S. § 13-3603."[4] PPAZ, a successor-in-interest to Planned Parenthood of Tucson, opposed the motion. The PCAO joined in PPAZ's arguments. They acknowledged that, in light of *Dobbs*, the injunction had to be modified because it was based on *Roe*. But they argued the court should "harmonize" all statutes "as they exist today . . . to make clear that § 13-3603 can be enforceable in some respects" but Brnovich and the PCAO should be enjoined "from taking any action or threatening to enforce the provisions of A.R.S. § 13-3603 with respect to abortions provided by licensed physicians" under the regulatory scheme in Title 36.

**¶6** The trial court granted the Rule 60 motion, concluding the "legal basis for the judgment entered in 1973 has now been overruled," and vacated the order granting injunctive relief. The court declined PPAZ and the PCAO's request to address the interaction between § 13-3603 and Arizona statutes enacted since the injunction, describing that undertaking as "procedurally improper." The court agreed with Brnovich that, pursuant to Rule 60(b)(5), it was not permitted to consider anything other than whether the constitutional principles forming the basis for the injunction were still valid. This appeal followed.

## Discussion

### The Trial Court's Limited Review Under Rule 60

**¶7** We must first determine whether the trial court erred, as PPAZ and the PCAO assert, by refusing to consider whether the injunction should be modified in light of current law. Brnovich argues that the court properly exercised its discretion in refusing to evaluate other changes in the law beyond *Dobbs*. We conclude the court erred in limiting its review.

**¶8** We generally review for an abuse of discretion a trial court's ruling on a motion for relief from judgment under Rule 60. *Rogone v.*

---

[4]Dr. Eric Hazelrigg was substituted as an intervenor and argued in support of Brnovich's motion. As to the issues we reach in this appeal, Hazelrigg's arguments largely parallel Brnovich's. We therefore do not separately address them.

*Correia*, 236 Ariz. 43, ¶ 12 (App. 2014). However, we review de novo the interpretation of court rules, including the scope of a trial court's authority under Rule 60. *See Duff v. Lee*, 250 Ariz. 135, ¶ 11 (2020). Rule 60(b)(5) permits a court to relieve a party from a final judgment if "it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Rule 60(b)(5) has "been used liberally in reopening otherwise final court orders where there has been a change in the law affecting substantial rights of a litigant." *Edsall v. Superior Court*, 143 Ariz. 240, 243 (1984).

**¶9** As noted above, the trial court concluded it lacked authority to evaluate the state of the law beyond whether *Roe* was still in force. But the inquiry is not solely whether some specific case, constitutional provision, or statute supporting the original injunction is no longer valid. Instead, the issue is whether the "legal landscape has changed," *Agostini v. Felton*, 521 U.S. 203, 216 (1997),[5] and that determination cannot be made by artificially narrowing the inquiry to only part of the current legal landscape. "A court may recognize subsequent changes in either *statutory* or decisional law." *Id.* at 215 (emphasis added). Consequently, the court abused its discretion by erroneously concluding it must limit its analysis here.[6]

---

[5] Arizona's Rule 60 is similar to the federal rule, and, thus, interpretation of the rule by federal courts is persuasive. *See Harper v. Canyon Land Dev., LLC*, 219 Ariz. 535, ¶ 6 (App. 2008).

[6] Nothing in the cases cited by Brnovich precludes a trial court's consideration of how the law has changed in evaluating whether Rule 60 relief is warranted. *See Horne v. Flores*, 557 U.S. 433, 448, 453 (2009) (noting particular value of Rule 60(b)(5) in evaluating "changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights" regarding longstanding injunctive relief and criticizing intermediate appellate court for "confining the scope of its analysis to that of the original order"); *California v. EPA*, 978 F.3d 708, 715-16 (9th Cir. 2020) (declining to revisit *factual* equities when law has changed). Brnovich additionally cites several cases for the proposition that a party cannot "re-litigate legal or factual claims underlying the original judgment." That is not what PPAZ and the PCAO have requested—they request only that any modification to the injunction reflect the whole of current Arizona law. Finally, Brnovich asserts that PPAZ is somehow bound by its argument in the pre-injunction litigation that § 13-3603 applies to all persons. But, because the regulatory scheme found in Title 36 did not exist at the time, PPAZ could not have raised this argument previously.

*See Phx. City Prosecutor v. Lowery*, 245 Ariz. 424, ¶ 6 (2018) (error of law constitutes abuse of discretion). We now turn to the question the court refused to consider.

**Licensed Physicians Who Perform Abortions Under Title 36**

**¶10** PPAZ argues that, by lifting the injunction entirely, the trial court's ruling causes "contradicting laws to take effect" and we should "harmonize[]" the statutes to conclude the abortion regulations in Title 36 govern. The PCAO similarly contends § 13-3603 cannot stand "unmodified" without conflicting with provisions in Title 36. They ask that we remand the case to the trial court to enter a "modified judgment" "making clear" that § 13-3603 does not apply to licensed physicians who perform abortions under Title 36. As they acknowledge, this is a question of law. As explained below, our resolution of this issue clarifies the statutes can be reconciled such that physicians are permitted to perform abortions in compliance with Title 36 and not be prosecuted under § 13-3603. We need not therefore remand to the trial court for any action, including a modified injunction. *See Bills v. Ariz. State Bd. of Educ.*, 169 Ariz. 366, 370 (App. 1991).

**¶11** "The primary aim of statutory construction is to find and give effect to legislative intent." *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, ¶ 11 (2001). We begin with the plain language of the statutes and must give effect to all provisions. *See Stambaugh v. Killian*, 242 Ariz. 508, ¶ 7 (2017). When statutes relate to the same subject matter, we read them together and consider not only "the literal meaning of the wording" but also "the whole system of related statutes." *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122 (1970). We do so "even where the statutes were enacted at different times, and contain no reference one to the other, and it is immaterial that they are found in different chapters of the revised statutes." *Id.* And "when two statutes appear to conflict, whenever possible, we adopt a construction that reconciles one with the other, giving force and meaning to all statutes involved." *UNUM Life Ins. Co. of Am.*, 200 Ariz. 327, ¶ 28.

**¶12** PPAZ and the PCAO argue that § 13-3603 and the regulatory scheme in Title 36 can be harmonized by allowing licensed physicians to provide abortions under Title 36 and applying § 13-3603 to non-physicians. The PCAO argues in the alternative that "this court should find § 13-3603 to be implicitly repealed in scope so that the entire statutory scheme is given consistent operation."

**¶13** We agree that the statutes can be reconciled. But for reasons discussed below, we disagree that there is some conflict between § 13-3603 and Title 36 that must result in the repeal of either, implicit or otherwise. *See UNUM Life Ins. Co. of Am.*, 200 Ariz. 327, ¶ 28. The statutes, read together, make clear that physicians are permitted to perform abortions as regulated by Title 36 regardless of § 13-3603. Thus, physicians who perform abortions in compliance with Title 36 are not subject to prosecution under § 13-3603.

**¶14** Arizona's most recent abortion regulation is the 15-week law, which directs that a physician "may not intentionally or knowingly perform, induce or attempt to perform or induce an abortion if the probable gestational age of the unborn human being has been determined to be greater than fifteen weeks" absent "a medical emergency." § 36-2322(B). Violating that section is a class six felony. § 36-2324(A). Other abortion regulations found in Title 36 restrict abortion of a viable fetus, § 36-2301.01, and restrict the provision of abortion without complying with specific notice and consent requirements, including parental consent in the case of abortions provided to juveniles, §§ 36-2152, 36-2153, 36-2156, 36-2158. There are also numerous reporting requirements. §§ 36-2161 to 36-2164, 36-2322 to 36-2323.

**¶15** In contrast, § 13-3603 states in full:

> A person who provides, supplies or administers to a pregnant woman, or procures such woman to take any medicine, drugs or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless it is necessary to save her life, shall be punished by imprisonment in the state prison for not less than two years nor more than five years.[7]

Construed in isolation, § 13-3603 criminalizes most abortions, and its plain language would encompass abortions performed by licensed physicians. But we do not construe statutes in isolation. *See Farley*, 106 Ariz. at 122. In

---

[7] A procured "miscarriage" historically had the same common language definition as an "abortion"—that is, any artificial termination of a pregnancy. *See Abortion*, *Miscarriage*, Black's Law Dictionary (11th ed. 2019).

enacting the 15-week law, the legislature made its intent clear: "to restrict the practice of nontherapeutic or elective abortion to the period up to fifteen weeks of gestation." 2022 Ariz. Sess. Laws, ch. 105, § 3(B).

**¶16** The 15-week law and other statutes in Title 36 regulate the provision of abortion by licensed physicians, encompassing not only the provision of abortion but ancillary matters. Violations of these various provisions carry not only criminal penalties but other penalties including licensing sanctions and civil liability. *See, e.g.*, §§ 36-2152(I), (J), 36-2158(C), (D), 36-2163(G), (H), 36-2303, 36-2324(A), 36-2325(A). In sum, the legislature has created a complex regulatory scheme to achieve its intent to restrict—but not to eliminate—elective abortions. Reading § 13-3603 to impose criminal liability for physicians providing those restricted abortions would eliminate the elective abortions the legislature merely intended to regulate under Title 36.

**¶17** Brnovich agrees the statutes do not conflict but argues physicians may nonetheless be prosecuted under § 13-3603 because it applies to "[a] person," a term that "undeniably includes licensed physicians." *See* A.R.S. § 13-105(30) (a "[p]erson" is "a human being"). We reject Brnovich's reading for three reasons. First, it ignores the unambiguous legislative intent to regulate but not eliminate elective abortions, as we have explained. Second, it creates an irreconcilable conflict between § 13-3603 and Title 36 because it would criminalize conduct permitted by Title 36. Third, it violates due process by promoting arbitrary enforcement. We address the second and third reasons in turn.

**¶18** Regarding the second reason, adopting Brnovich's proposed reading would require us to disregard legislative intent and result in an irreconcilable conflict between § 13-3603 and Title 36. A conflict exists when statutes cannot be read "to give each effect and meaning." *Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, ¶ 24 (2013). Brnovich correctly observes that, when comparing overlapping criminal statutes, we find a conflict only when the elements required to establish guilt under the specific statute are identical to the elements required to establish guilt under the general statute. *State v. Gagnon*, 236 Ariz. 334, ¶ 7 (App. 2014); *see, e.g.*, *State v. Far W. Water & Sewer, Inc.*, 224 Ariz. 173, ¶ 21 (App. 2010); *State v. Sommer*, 155 Ariz. 145, 147 (App. 1987); *State v. Weiner*, 126 Ariz. 454, 456 (App. 1980); *State v. O'Brien*, 123 Ariz. 578, 584 (App. 1979).

**¶19** But that analysis is not apt here. We are not evaluating separate statutes prohibiting the same conduct. Instead, we are faced with a statutory scheme that, if read as Brnovich suggests, would criminalize

conduct under one statute that our legislature has expressly allowed under another.[8] As Brnovich acknowledged at oral argument before this court, under his view it would be impossible for a physician to perform an elective abortion in compliance with Title 36 without potentially facing criminal prosecution under § 13-3603. And Brnovich's reading would effectively render Title 36's regulation of elective abortion all but meaningless because there would be no legal elective abortions. For example, the statutory provisions requiring the reporting of elective abortions, including abortions for rape and incest, *see* § 36-2161(A)(12)(a), (d), (e), would serve no useful purpose. Nor would there be any continuing relevance to provisions like § 36-2153(A)(2)(b), which requires that the patient seeking an abortion be informed that the "father of the unborn child is liable to assist in the support of the child" except in cases of rape or incest. Instead, we must adopt a reading that gives vitality to all the relevant statutes. *See UNUM Life Ins. Co. of Am.*, 200 Ariz. 327, ¶ 28.

**¶20** This leads us to the third reason Brnovich's interpretation is unsound. If we adopted it, the resulting uncertainty for licensed physicians who provide abortion services would violate due process, which requires that "the law must be sufficiently definite to avoid arbitrary enforcement." *State v. Schmidt*, 220 Ariz. 563, ¶ 5 (2009). "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Brnovich's interpretation would not merely invite arbitrary enforcement, it would practically demand it. When interpreting statutes, we assume our legislature has enacted them to avoid

[8]We reject Brnovich's claim that the 15-week law cannot be read to preclude the prosecution of physicians under § 13-3603 because the 15-week law does not "allow" abortions. This argument is grounded in Brnovich's refusal to consider the entire statutory scheme as a whole, but we are required to consider all relevant statutes. *See Farley*, 106 Ariz. at 122. The 15-week law prohibits abortions except those it allows—that is, it permits a licensed physician to perform abortions in emergency situations and elective abortions if the physician has determined the fetus's gestational age is fifteen weeks or less and otherwise has complied with Title 36. § 36-2322(A), (B). We also reject Brnovich's related contention that our reading somehow runs afoul of the legislature's statement that the 15-week law does not create a right to abortion or "make lawful an abortion that is currently unlawful." 2022 Ariz. Sess. Laws, ch. 105, § 2(1). At the time the legislature enacted the 15-week law, § 13-3603 was unenforceable. Elective abortions were, at that time, permitted in compliance with Title 36, as they are now.

such unconstitutional results. *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272 (1994) (court construes statutes to avoid rendering them unconstitutional).

**¶21** According to Brnovich, the conflict his interpretation creates is resolved because prosecutors have discretion whether and how to charge those who violate criminal statutes. But under this interpretation, physicians performing elective abortions would not know if their conduct would be criminally prosecuted under § 13-3603 or if they could avoid criminal liability by complying with Title 36. Even if a specific county attorney and attorney general had publicly promised they would not charge physicians under § 13-3603, a physician would still be at risk considering the statute of limitations for felonies in Arizona exceeds the term of elected county attorneys and the attorney general. *See* Ariz. Const. art. V, § 1, art. XII, § 3; A.R.S. § 13-107(B).

**¶22** Brnovich further suggests that we are essentially imposing a partial implied repeal of § 13-3603 by concluding the legislature intended to permit physicians to perform elective abortions under the 15-week law. Under the doctrine of implied repeal, where it appears by reason of repugnancy, or inconsistency, that two conflicting statutes cannot operate contemporaneously, the "more recent, specific statute governs over [an] older, more general statute." *UNUM Life Ins. Co. of Am.*, 200 Ariz. 327, ¶ 29 (alteration in *UNUM*) (quoting *Lemons v. Superior Court*, 141 Ariz. 502, 505 (1984)). Not only is the doctrine of implied repeal disfavored, *id.* ¶ 28, our legislature has specifically instructed us to construe the 15-week law in a manner that does not "[r]epeal, by implication or otherwise, section 13-3603, Arizona Revised Statutes, or any other applicable state law regulating or restricting abortion," 2022 Ariz. Sess. Laws, ch. 105, § 2(2).

**¶23** But as we have already explained, we are not imposing an implied repeal here. The doctrine of implied repeal requires as a predicate that any apparent conflict between the statutes cannot be reconciled to give "force and meaning to all statutes involved." *UNUM Life Ins. Co. of Am.*, 200 Ariz. 327, ¶ 28. Here, our numerous statutes regulating abortion can be readily reconciled in conformity with our legislature's express intent that we do so. The 15-week law permits physicians to perform abortions and clearly delineates the penalties for doing so in violation of that statutory scheme. This is consistent with the exception originally created by the legislature in § 13-3603 for abortions performed by licensed physicians to save the life of the mother. Any other person who intentionally performs an abortion is subject to prosecution under § 13-3603. We thus need not imply the legislature's intent—it stated it directly.

**¶24** Finally, our legislature conspicuously avoided statutory language stating that § 13-3603 should govern irrespective of other law should *Roe* be overturned. For example, in enacting its own 15-week law, the Mississippi legislature included clauses stating that: "An abortion that complies with this section, but violates any other state law, is unlawful. An abortion that complies with another state law, but violates this section is unlawful." Miss. Code Ann. § 41-41-191(8) (2018). Arizona's 15-week law contains no such clause despite otherwise mirroring Mississippi's law, almost word for word, in all other respects. And our legislature has enacted comparable "trigger" clauses in other statutes. *See, e.g.*, 1999 Ariz. Sess. Laws, ch. 311, §§ 12, 13 (calling for varying definition of "abortion clinic" depending on constitutionality of definition). The legislature's decision to forgo a similar provision here further reflects its intent that licensed physicians not face criminal prosecution under § 13-3603 for providing certain elective abortions.

**Attorney Fees and Costs**

**¶25** PPAZ requests an award of attorney fees and costs under A.R.S. §§ 12-341, 12-342, 12-348, "and the private attorney general doctrine" but provides no further explanation supporting its entitlement to attorney fees. Accordingly, in our discretion, we deny PPAZ's request for attorney fees, but, as the prevailing party, PPAZ is entitled to its costs upon compliance with Rule 21, Ariz. R. Civ. App. P. *See* § 12-341.

**Disposition**

**¶26** Licensed physicians who perform abortions in compliance with Title 36 are not subject to prosecution under § 13-3603. We affirm in part and reverse in part the trial court's order as modified by this opinion.

E C K E R S T R O M, Presiding Judge, specially concurring:

**¶27** In lifting the injunction and giving effect to § 13-3603, a law originally enacted over a century ago, we must necessarily address how that statute integrates with Arizona's subsequently enacted statutes regulating abortion. In doing so, we strictly follow our legislature's direction on how its more contemporary laws should interact with § 13-3603. To the extent detailed legislative instruction is not provided, we apply settled canons of construction for integrating new statutes with old.

**¶28** Here, the legislature has expressly directed that we read our subsequent statutes regulating abortion in harmony with § 13-3603. Its most recent bill, the "15-week law," specifically instructs that neither

Arizona's original law, nor its host of more modern regulations of abortion, is "[r]epeal[ed], by implication or otherwise." 2022 Ariz. Sess. Laws, ch. 105, § 2. This conforms with our threshold canon, well understood by our legislature, for how we presumptively integrate newer statutes into an existing statutory framework: we read new statutes in harmony with old ones. *Fleming v. State Dep't of Pub. Safety*, 237 Ariz. 414, ¶ 12 (2015) (courts must construe separate statutory provisions relating to same subject matter "together as though they constitute one law"); *UNUM Life Ins. Co. of Am.*, 200 Ariz. 327, ¶ 28; *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously.").

**¶29** At the same time, we recognize that our legislature fully intends its new statutes to alter the pre-existing legal landscape; otherwise, it would not have bothered to pass them. Therefore, when conducting the harmonization process, we understand new laws, to the extent possible, as amending, amplifying, or calibrating pre-existing statutes without supplanting them. *See, e.g.*, *State v. Cassius*, 110 Ariz. 485, 487 (1974) (when later statute expresses more specific intent than more general existing statutes, new statute is "taken as an exception to the general intent, and both will stand"); *O'Brien*, 123 Ariz. at 583 (legislatures presumed to enact statutes compatible with existing legislation: "where the [later] specific statute is narrower, the [older] general one is not repealed").

**¶30** In this case, harmonizing all of our state's abortion statutes is not a difficult task. As the majority's analysis demonstrates, our contemporary laws relating to abortion can be read, side by side, with our original one, without depriving any of continuing legislative logic or vitality.

**¶31** Arizona's original statute outlawing most abortions, § 13-3603, itself contains an exception permitting abortions when necessary to save the life of the mother. Arizona's more specific subsequent laws, including the most recent 15-week law, may be read in harmony with that provision, by understanding them as merely adding further exceptions to the general prohibition on abortion. *See Cassius*, 110 Ariz. at 487 (subsequent legislation may carve out exceptions to earlier, more general statute without supplanting it). Under this construction, our contemporary statutes permit physicians to perform elective abortions up to fifteen weeks but only in conformity with a host of exacting regulations. Our original law continues to outlaw abortions under all circumstances not permitted by that subsequent legislation. This construction results in a coherent and easily applied statutory scheme. It is the only construction that comports with the

legislature's direction that each of the statutes regulating abortion continue to have force and effect.

**¶32** Brnovich objects that this construction markedly changes the ultimate application of § 13-3603 from its original effect in 1912. But we must presume legislatures know, and fully intend, that all new laws will, as a practical matter, change the pre-existing statutory landscape in some respect—even when the new legislation, as here, expressly directs us that pre-existing laws have not been repealed. As the above-cited authority implicitly instructs, we assume non-repeal language in current legislation merely directs us to consider that legislation as amending or calibrating, rather than replacing, the non-repealed statute. It would be nonsensical to do what Brnovich urges: to nullify, as a practical matter, the very legislation that contains the non-repeal clause in favor of the older, non-repealed statute. *See id.* ("The presumption is that the legislature did not intend to do a futile thing by including in a statute a provision which is nonoperative or invalid.").

**¶33** The majority explains why Brnovich's own suggestion for how we should harmonize the old and new statutes—by empowering prosecutorial discretion—would necessarily create unconstitutional conflict between the statutes in application. But, perhaps more importantly, Brnovich's remedy goes unmentioned in any statutory text provided by the legislature. Had our legislature intended the lawfulness of elective abortion to vary depending on the county-by-county discretion of local law enforcement officials, county attorneys, and the state-wide discretion of the attorney general, it would have specified such a complicated and extraordinary approach in direct, unambiguous language. Instead, in the 15-week law, our legislature sets forth a detailed regulatory structure outlawing elective abortions after fifteen weeks of gestational age. It articulates requirements for ascertaining and reporting the gestational age of a fetus and medical circumstances under which abortions may be performed after fifteen weeks. § 36-2322. It sets forth specific penalties for a person violating its provisions. §§ 36-2324(A), 36-2325. Far from providing law enforcement agencies broad discretion on prosecuting elective abortions, our most recent statute gives detailed instruction to those officials on when physicians may, and may not, be criminally prosecuted or civilly sanctioned for performing an abortion. §§ 36-2322, 36-2324(A), 36-2326, 36-2325.

**¶34** In sum, I join fully with the majority's reasoning because it best complies with our legislature's express instructions that we give all existing abortion regulations vitality: that we impliedly repeal no

provision, old or new. It also executes our legislature's expectation that, to the extent its express instructions do not settle all disputes in construction, we will conduct the obligatory harmonization process in conformity with our settled canons for doing so. By this process, we show our strictest fidelity to legislative intent.