IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**ANTHONY GARCIA,**
*Petitioner,*

*v.*

**HON. MICHAEL J. BUTLER, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,**
*Respondent Judge,*

**STATE OF ARIZONA, BY AND THROUGH THE PIMA COUNTY ATTORNEY,**
*Real Party in Interest.*

No. CR-19-0298-PR
Filed May 26, 2021

Special Action from the Superior Court in Pima County
The Honorable Michael J. Butler, Judge
No. CR20184269-001
**VACATED AND REMANDED**

Opinion of the Court of Appeals, Division Two
247 Ariz. 366 (App. 2019)
**VACATED**

COUNSEL:

Joel Feinman, Pima County Public Defender, Lisa M. Surhio (argued), Deputy Public Defender, Tucson, Attorneys for Anthony Garcia

Laura Conover, Pima County Attorney, Jacob R. Lines (argued), Deputy County Attorney, Tucson, Attorneys for Real Party in Interest State of Arizona

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES

BOLICK, LOPEZ, and MONTGOMERY joined.[*]

JUSTICE BEENE, Opinion of the Court:

¶1        Arizona statutes set forth the procedure for determining whether an individual is a sexually violent person ("SVP").  *See* A.R.S. §§ 36-3701, -3707.  In this Opinion, we address whether a trial court has discretion to deny an SVP screening when the state requests one under A.R.S. § 13-4518(A).  Because we hold that the court has discretion to deny a screening, we vacate the trial court's order declining to exercise that discretion and remand for that court to decide whether a screening should occur.

## BACKGROUND

¶2        In October 2018, the State charged Anthony Garcia with one count of sexual conduct with a minor.  *See* A.R.S. § 13-1405(A).  Garcia moved for a competency examination pursuant to Arizona Rule of Criminal Procedure ("Rule") 11.2, and after a hearing, the trial court found Garcia not competent and not restorable ("NCNR").[1]

¶3        The State requested an SVP screening pursuant to § 13-4518(A), arguing that the procedure was warranted because Garcia (1) was found NCNR and (2) was charged with a qualifying sexually violent

---

[*]        Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of this Opinion and did not take part in its drafting.

[1]        We cite the current version of statutes and rules unless substantive changes have occurred since the events in question.  This Court has twice amended Rule 11.5 since the indictment in this case.  Because the changes are substantive, *compare* Ariz. R. Crim. P. 11.5(b)(3) (2018) (not distinguishing between the superior and limited jurisdiction courts with regards to defendants that are found incompetent and not restorable), *with* Ariz. R. Crim. P. 11.5(b)(3) (2020) (providing separate directives for superior and limited jurisdiction courts), we cite the version of Rule 11.5 in place at the time of Garcia's alleged conduct.  Rule 11.2 has not been changed since the events in question, so we cite the current version.

offense. In response, Garcia argued that § 13-4518 did not require a screening and it would be an abuse of discretion to order one where the record lacked substantial evidence to support the order. Specifically, he argued neither the doctors' diagnoses from the Rule 11 proceeding nor any other records pertaining to him resulted in a diagnosis of a qualifying mental disorder as required by § 36-3701(7).

¶4 The trial court held a hearing regarding the State's request. At the hearing, Garcia conceded that the State had met the two elements of § 13-4518(A): that the report concluded there was no substantial probability the defendant would regain competency in twenty-one months and that the defendant was charged with or was convicted of or found guilty except insane for a sexually violent offense. However, Garcia argued that this alone did not require the court to grant the State's request for an SVP screening. The State conceded that no evidence showed Garcia had a mental disorder making it likely he would commit sexually violent acts because he had not been evaluated for one, but nonetheless argued it was still entitled to the screening.

¶5 The trial court ordered the screening, finding it was undisputed that Garcia was NCNR and that he was charged with a sexually violent offense as required by § 13-4518(A). It ruled the State was entitled to a screening because the State made a prima facie showing that § 13-4518(A)'s two requirements were met. Garcia requested a stay, which the court denied, and Garcia petitioned the court of appeals for special action.

¶6 In a divided opinion, the court of appeals accepted jurisdiction but denied relief. *Garcia v. Butler*, 247 Ariz. 366, 367 ¶ 1 (App. 2019). The majority held that the trial court had no discretion to deny the State's request for an SVP screening when the § 13-4518(A) requirements were met. *Id.* The dissenting judge, however, concluded that § 13-4518(A) "addresses the circumstances under which the *state* possesses the discretion to seek a screening," while § 13-4518(B) "unambiguously establishes the court's authority to deny the screening." *Id.* at 372–73 ¶¶ 24–25 (Eckerstrom, J., dissenting). The dissent went on to state that the majority's reading of § 13-4518 "violates basic due process and risks rendering the statute unconstitutional." *Id.* at 375 ¶ 39.

3

¶7          We granted review because this is a matter of first impression and of statewide importance.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

¶8          Since 1995, Arizona's SVP Act has provided procedures for identifying, evaluating, and involuntarily committing SVPs.   A.R.S. §§ 36-3701 to -3717; *In re Leon G.*, 204 Ariz. 15, 19 ¶ 10 n.4 (2002).  The Act defines an SVP as any person who: (1) "[h]as ever been convicted of or found guilty but insane of a sexually violent offense or was charged with a sexually violent offense and was determined incompetent to stand trial"; and (2) "[h]as a mental disorder that makes the person likely to engage in acts of sexual violence."  § 36-3701(7).  A mental disorder is "a paraphilia, personality disorder or conduct disorder or any combination of [those] that predisposes a person to commit sexual acts to such a degree as to render the person a danger to the health and safety of others."  § 36-3701(5).

¶9          In 2017, the Arizona Legislature enacted A.R.S. § 13-4518, which provides:

> A. If the county attorney receives a report that determines a defendant is incompetent to stand trial, the county attorney may request that the defendant be screened to determine if the defendant may be a sexually violent person, if both:
>
> 1. The report concludes that there is no substantial probability that the defendant will regain competency within twenty-one months after the date of the original finding of incompetency.
>
> 2. The defendant is charged with or has ever been convicted of or found guilty except insane for a sexually violent offense as defined in § 36-3701.

4

B. If the court orders a screening to determine if the defendant may be a sexually violent person, both of the following apply:

1. The court shall appoint a competent professional as defined in § 36-3701 to conduct the screening and submit a report to the court and the parties within thirty days after the appointment.

2. The criminal case may not be dismissed until the competent professional's report is provided to the court and the parties and a hearing is held pursuant to subsection C of this section or the county attorney files a petition pursuant to § 36-3704.

¶10          Garcia argues: (1) § 13-4518(B) gives trial courts discretion to deny the State's request for an SVP screening; (2) interpreting § 13-4518(B) to deny trial courts discretion would violate due process; and (3) the court abused its discretion here by failing to exercise it.  Although the court of appeals' majority opinion did not address Garcia's due process arguments because it considered them insufficiently raised and developed in the trial court and court of appeals, *Garcia*, 247 Ariz. at 371–72 ¶¶ 19–20 & n.5, we have discretion to address a constitutional issue raised for the first time on appeal, *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 503 (1987).  Exercising that discretion, we address the due process issue because it is one of first impression, of statewide concern, and of constitutional dimension, *Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 482 (1986); there are no facts at issue, *Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 104 (1984); and we "construe statutes, when possible, to avoid constitutional difficulties," *State v. Gomez*, 212 Ariz. 55, 60 ¶ 28 (2006).

¶11          We review the interpretation of statutes de novo, *Nicaise v. Sundaram*, 245 Ariz. 566, 567 ¶ 6 (2019), and the trial court's refusal or failure to exercise discretion for an abuse of discretion, *State v. Garza*, 192 Ariz. 171, 175 ¶ 16 (1998).

**I.**

**¶12** We look first to § 13-4518's language to determine whether it gives trial courts discretion to order an SVP screening. When interpreting a statute, we aim "to give effect to the legislature's intent." *See Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016) (quoting *Parrot v. DaimlerChrysler Corp.*, 212 Ariz. 255, 257 ¶ 7 (2006)). "A statute's plain language best indicates legislative intent, and when the language is clear, we apply it unless an absurd or unconstitutional result would follow." *Id.* We must "give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise*, 245 Ariz. at 568 ¶ 11.

**¶13** The plain language of § 13-4518 compels the conclusion that the trial court has discretion to order an SVP screening. Subsection (A) sets forth the circumstances under which the state may request a screening: "[i]f the county attorney receives a report that determines a defendant is incompetent to stand trial, the county attorney may request that the defendant be screened to determine if the defendant may be a sexually violent person . . . ." § 13-4518(A). Generally, the use of "may" indicates permissive intent and a grant of discretion. *Democratic Party of Pima Cnty. v. Ford*, 228 Ariz. 545, 548 ¶ 9 (App. 2012); *State v. Lewis*, 224 Ariz. 512, 515 ¶ 17 (App. 2010) ("A general principle of statutory construction is that the use of the word 'may' generally indicates a permissive provision . . . ."). Similarly, the word "request" conveys asking for a privilege and does not convey an entitlement. *See Request*, The American Heritage Dictionary (5th ed. 2011) (definition of "request" includes "to express a desire for, especially politely; ask for"). The state's discretion, however, can be exercised only if two circumstances exist: (1) the report concludes the defendant is NCNR, and (2) the defendant is "charged with or has ever been convicted of or found guilty except insane for a sexually violent offense" as defined by statute. § 13-4518(A)(1)–(2). Consequently, subsection (A) only addresses the circumstances in which the state may seek a screening and concomitantly does not contain any language that limits the authority of the court to grant or deny the state's request.

**¶14** If the state requests a screening under subsection (A), it falls to the trial court to determine whether to order the screening. The trial court's authority to act on the state's request is articulated in subsection (B)(1)–(2). *See* § 13-4518(B) ("*If* the court orders a screening to determine if

the defendant may be a sexually violent person . . . ." (emphasis added)); *see also If*, The American Heritage Dictionary (5th ed. 2011) (2017) (definitions of "if" include "in the event that" and "on the condition that"). The word "if" implies conditionality. *See, e.g.*, *MidAmerica Constr. Mgmt. v. Mastec N. Am., Inc.*, 436 F.3d 1257, 1263 (10th Cir. 2006) (explaining that the word "if" is "indicative of the creation of a condition precedent" (citing Black's Law Dictionary (8th ed. 2004))). The legislature's use of conditional language in subsection (B) establishes the trial court's authority to deny the state's request for a screening; the use of the word "if" indicates that the remainder of the subsection only applies under the condition that the trial court has chosen to act, necessarily establishing the court's discretion to not act. Subsection (B) does not limit a court's discretion whether to grant or deny the state's request for a screening.

¶15          Moreover, the legislature's use of mandatory language in § 13-4518(B) further supports this interpretation. After the trial court determines that an SVP screening is warranted under subsection (A), the language in subsection (B) divests it of any further discretion regarding the screening of the defendant. *See* § 13-4518(B)(1)–(2) ("The court *shall* appoint a competent professional . . . to conduct the screening . . . . The criminal case *may not* be dismissed until the competent professional's report is provided to the court . . . ." (emphasis added)); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (characterizing "shall" and "may not" as mandatory); *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 132 ¶ 19 (2020) ("The term 'shall' is usually mandatory.").

¶16          The legislature's use of restrictive language in one section of the statute but not in the other section indicates that it intended the restriction to apply only where it was designated. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))); *see also Sempre Ltd. P'ship v. Maricopa County*, 225 Ariz. 106, 109 ¶ 11 (App. 2010) ("When the Legislature has used both 'may' and 'shall' in the same paragraph of a statute, we infer that the Legislature acknowledged the difference and intended each word to carry its ordinary meaning." (quoting *HCZ Constr., Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 365 ¶ 15 (App. 2001))). Because subsection (B) uses

7

permissive language to grant the court discretion to act on the state's request for a screening, and because subsections (B)(1)–(2) use mandatory language to set forth what the court must do if it grants the screening, we are persuaded that § 13-4518's plain language gives the trial court discretion when the state requests an SVP screening.

¶17 An examination of Arizona's civil commitment statutes also supports this conclusion. *See Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017) ("In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved."). Our state's civil commitment process requires that any decision to deprive patients of their liberty must be made by a neutral arbiter who, after reviewing the information contained in a petition for evaluation, determines whether additional mental health services are warranted. *See* A.R.S. §§ 36-520 to -529; *see also Addington v. Texas*, 441 U.S. 418, 425 (1979) ("[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections."). As the dissenting judge correctly noted, "[t]he core features of [the] civil scheme, which are designed to provide due process, should apply no less to a patient whose mental defects have been identified through an initial criminal process." *Garcia*, 247 Ariz. at 375 ¶ 38 (Eckerstrom, J., dissenting).

¶18 Even if § 13-4518 was ambiguous, secondary principles of construction support our interpretation. *See Rosas v. Ariz. Dep't of Econ. Sec.*, 249 Ariz. 26, 28 ¶ 13 (2020) ("If the statute's text yields different reasonable meanings, we consider secondary interpretation methods . . . ."). This interpretation avoids constitutional difficulties, and when the relevant text allows, we construe statutes to comply with constitutional requirements. *See Piccioli v. City of Phoenix*, 249 Ariz. 113, 118 ¶ 15 (2020) (stating that secondary interpretive principles include the effects and consequences of different interpretations); *Gomez*, 212 Ariz. at 60 ¶ 28.

¶19 Providing the state with complete discretion regarding whether to request a screening once the statutory conditions are met while depriving the trial court of any oversight in the exercise of that discretion would violate basic due process principles by depriving a defendant of a neutral arbitrator. *See Ward v. Vill. of Monroeville*, 409 U.S. 57, 61–62 (1972) (due process requires "a neutral and detached judge in the first instance");

*Horne v. Polk*, 242 Ariz. 226, 231 ¶ 17 (2017) ("The right to a neutral adjudicator has long been recognized as a component of a fair process. One cannot both participate in a case (for instance, as a prosecutor) and then decide the case."). For this additional reason, we decline to interpret § 13-4518 as urged by the State.

**¶20** In sum, § 13-4518's plain language provides the trial court with discretion to grant or deny the state's SVP screening request.

## II.

**¶21** Having determined that trial courts have discretion to deny an SVP screening, we must determine whether the court here abused that discretion by ordering a screening. We conclude it did.

**¶22** As previously noted, the State requested an SVP screening pursuant to § 13-4518(A). The State asked the court to order Garcia to submit to a screening because both criteria in § 13-4518(A) were established. In response, Garcia argued that § 13-4518 did not require a screening, and it would be an abuse of discretion to order one where the record lacked substantial evidence to support the order.

**¶23** After a hearing on the State's request, the trial court ordered Garcia to be evaluated pursuant to § 13-4518. It ruled that because the two requirements in § 13-4518(A) were met, the State was entitled to the screening. An examination of the record reveals that the trial court believed it had no discretion to deny the State's request once the two § 13-4518(A) requirements were proven. Because the court erroneously concluded it lacked discretion to deny the State's request, its failure to exercise discretion constitutes legal error and is an abuse of discretion. *Garza*, 192 Ariz. at 175 ¶ 16. For this reason, we vacate the trial court's screening order and remand for it to exercise its discretion under § 13-4518(B).

## III.

**¶24** Our decision to remand raises other issues we must address to guide the trial court's determination. The first is identifying the standard a trial court should apply when considering an SVP screening request.

¶25        Although no standard is mentioned in the statute, we conclude the court must consider whether the state has reasonable grounds to request an SVP screening. The objective in giving the trial court discretion under § 13-4518(B) is for the court to act as a neutral check on the state's authority and to balance public safety with a defendant's due process rights. *Cf. United States v. Salerno*, 481 U.S. 739, 750–51 (1987) (stating that an individual's strong interest in liberty "may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society"). The court must, therefore, require the state to offer reasonable grounds that indicate an SVP screening might support the initiation of commitment proceedings under § 36-3704. The reasonable grounds standard is not novel; courts use it when determining whether to order a preliminary examination of a defendant's competence to stand trial under Rule 11.2, a process that is similar to the procedure of § 13-4518 because it gives the court discretion to order a preliminary screening before ordering a full Rule 11 mental competency examination. *See* Ariz. R. Crim. P. 11.2(c) ("A court may order the defendant to undergo a preliminary examination to assist the court in determining if *reasonable grounds* exist to order the defendant's further examination." (emphasis added)). Both provisions aim to balance the state's interests with the defendant's rights, and the reasonable grounds standard allows the court to effectively exercise its discretion.

¶26        Secondly, we must delineate what the trial court should consider when deciding whether to grant the request for an SVP screening. Section 13-4518(B)'s language does not limit the factors the trial court may consider when exercising its discretion. Accordingly, when determining whether to order an SVP screening, the trial court must evaluate the request as it would any other motion, relying on the evidence and arguments proffered by the parties and any other information before it. *See* § 36-3705(D) (stating a court may rely on the SVP petition and any supplemental evidence provided by the state and the accused when making its probable cause determination). Information obtained from the Rule 11 proceeding, the nature of the charged offense, and the facts and circumstances surrounding the case would be instructive for the court when determining whether to order a screening. This list of factors is not exhaustive, however, and a court should consider all relevant evidence when it exercises its discretion under § 13-4518(B) in determining whether to order a defendant to undergo an SVP screening.

## CONCLUSION

¶27 Section 13-4518's language and structure indicate, and due process requires, that trial courts have discretion to deny the state's SVP screening request. The trial court in this case erred in not exercising that discretion. We vacate the trial court's order, vacate the court of appeals' opinion, and remand to the trial court to exercise its discretion in deciding whether to grant the State's screening request.