IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**JIE CAO, ET AL.,**
*Plaintiffs/Appellants,*

*v.*

**PFP DORSEY INVESTMENTS, LLC, ET AL.,**
*Defendants/Appellees.*

————————

No. CV-22-0228-PR
Filed March 22, 2024

————————

Appeal from the Superior Court in Maricopa County
The Honorable Daniel G. Martin, Judge
No. CV2019-055353
**AFFIRMED IN PART AND REMANDED**

Opinion of the Court of Appeals, Division One
253 Ariz. 552 (App. 2022)
**VACATED**

————————

COUNSEL:

Eric M. Fraser (argued), John S. Bullock, Osborn Maledon, P.A., Phoenix, Attorneys for Jie Cao and Haining "Frazer" Xia

Charles E. Markle, Greenberg Traurig, LLP, Phoenix, Timothy J. Berg (argued), Brett C. Gilmore, Fennemore Craig, P.C., Phoenix, Attorneys for PFP Dorsey Investments, LLC and Dorsey Place Condominium Association

Shawna M. Woner, Stephanie K. Gintert, Woner Hoffmaster Peshek & Gintert, PC, Scottsdale; Matthew E. Price, Jenner & Block LLP, Washington, DC, Attorneys for PFP Dorsey Investments, LLC

Edith I. Rudder, Nicholas C. S. Nogami, Carpenter Hazlewood Delgado & Bolen, LLP, Tempe, Attorneys for Dorsey Place Condominium Association

Timothy Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

Jonathan A. Dessaules, Ashley C. Hill, Dessaules Law Group, Phoenix, Attorneys for Amicus Curiae Arizona Homeowners

James T. Braselton, Vail C. Cloar, Dickinson Wright PLLC, Phoenix, Attorneys for Amici Curiae Papago Springs, LLC, and Mahdere Gebreyesus Desta and Gary and Allien Stoloff

Quinten T. Cupps, Vial Fotheringham, LLP, Mesa, Lynn M. Krupnik, Timothy J. Krupnik, Krupnik & Speas, LLC, Phoenix, Robert M. Diamond, Reed Smith LLP, McLean, VA, James C. Martin, Ted A. Hages, Reed Smith LLP, Pittsburgh, PA, Attorneys for Amicus Curiae Community Associations

Kathryn D. Valois, Pacific Legal Foundation, Palm Beach Gardens, FL, James M. Manley, Pacific Legal Foundation, Phoenix, Attorneys for Amicus Curiae Pacific Legal Foundation

Andrew T. Fox, Austin C. Yost, Coppersmith Brockelman PLC, Phoenix, Attorneys for Amici Curiae Eric Buckeye, Peter Sczupak, Rekha Tataria, Mukesh Tataria and Amy Wautier

Derek Debus, Phoenix, Attorneys for Amicus Curiae Cato Institute

_____

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, MONTGOMERY, and KING joined.

_____

JUSTICE BOLICK, Opinion of the Court:

¶1        Petitioners Jie Cao and Haining Xia (the "Xias") are former condominium unit owners who object to the forced sale of their unit by their condominium association (the "Association") following dissolution of the condominium. We hold that the Arizona Condominium Act, A.R.S.

§ 33-1201, *et seq.* (the "Condominium Act"), which authorized and governed the sale's execution, does not violate the eminent domain provision of the Arizona Constitution as applied to the Xias. The Condominium Act was incorporated into the condominium declaration (the "Declaration") to which the Xias agreed, and the Declaration also provided for partition of the property upon dissolution. However, we also hold that under these circumstances, the Condominium Act required the sale of all property, rather than individual units as occurred here.

## BACKGROUND

**¶2** In 2007, a developer completed construction of Dorsey Place Condominiums ("Dorsey Place"), a single building comprised of ninety-six units. The developer recorded the Declaration, which established Dorsey Place's covenants, conditions, and restrictions. Article 2.1 of the Declaration "submit[ted Dorsey Place] . . . to the provisions of the Condominium Act for the purpose of creating a condominium in accordance with the provisions of the Condominium Act." The Declaration defined the Condominium Act as "A.R.S. § 33-1201, *et seq.*, as amended from time to time."

**¶3** As pertinent here, A.R.S. § 33-1228 (2018)[1] provided requirements and procedures for terminating a condominium. In particular, § 33-1228(C) provided "[a] termination agreement may provide that all the common elements and units of the condominium shall be sold following termination. If, pursuant to the agreement, any real estate in the condominium is to be sold following termination, the termination agreement shall set forth the minimum terms of the sale."

**¶4** Under the Declaration, unit owners acted through the Association. Article 2.7 of the Declaration provided that each unit owner would have one vote in the Association for each unit owned. Article 6.1 of the Declaration provided:

---

[1] The parties dispute which version of § 33-1228 applied to the Dorsey Place termination. The court of appeals held the version of § 33-1228 that became effective in 1986 applied. *Cao v. PFP Dorsey Invs., LLC*, 253 Ariz. 552, 556–58 ¶¶ 18–24 (App. 2022). For the reasons below, we disagree. Accordingly, all references to § 33-1228 refer to the version that became effective in 2018, unless otherwise noted.

3

> The Association shall have such rights, powers and duties as are prescribed by the Condominium Act, other applicable laws and regulations and as are set forth in the Condominium Documents together with the [sic] such rights, powers and duties as may be reasonably necessary in order to effectuate the objectives and purposes of the Association as set forth in this Declaration and the Condominium Act.

¶5　　　　In January 2018, the Xias purchased unit 106 at Dorsey Place. Pursuant to the Xias' warranty deed and the Declaration, the Xias took ownership to the unit subject to the Declaration. In November 2018, PFP Dorsey purchased ninety units at Dorsey Place. Other individuals, including the Xias, owned the remaining six units.

¶6　　　　In April 2019, the Association held a meeting to discuss terminating the condominium. At the meeting, the Association presented unit owners with a termination agreement that provided for the sale of "all portions of and interest in [Dorsey Place] not already owned by PFP [Dorsey], to PFP [Dorsey], upon termination of the Condominium." The termination agreement stated that PFP Dorsey would pay fair market value for the purchased property.

¶7　　　　The termination agreement stated PFP Dorsey had obtained an independent appraisal of the fair market value of the property to be purchased that would be made available to unit owners, and the appraisal would become final unless a unit owner disapproved. The agreement explained that if a unit owner disapproved of PFP Dorsey's appraisal, the disapproving unit owner could obtain an independent appraisal of their unit. If the unit owner's appraisal differed from PFP Dorsey's appraisal by five percent or less, then the unit owner's appraisal would become final as to their unit. If the unit owner's appraisal differed from PFP Dorsey's by more than five percent, then the disapproving unit owner could either accept PFP Dorsey's appraisal value or submit the matter to arbitration. The Xias did not obtain an independent appraisal.

¶8　　　　PFP Dorsey was the only unit owner that signed the termination agreement. Article 13.4 of the Declaration provided, "the Condominium may be terminated only by the agreement of Unit Owners of Units to which at least ninety percent (90%) of the votes in the Association are allocated." Because PFP Dorsey controlled 93.75% of the Association's votes, the Association ratified the termination agreement.

4

Subsequently, the Association recorded a warranty deed transferring title of the Xias' unit to PFP Dorsey. PFP Dorsey took possession of the Xias' unit, changed the locks, and disposed of the Xias' personal possessions.

¶9 The Xias filed a claim against the Association and PFP Dorsey alleging civil trespass, conversion, breach of fiduciary duty, unjust enrichment, and wrongful recording. *Cao*, 253 Ariz. at 555 ¶ 9. The Xias sought ejectment, imposition of a constructive trust, and to quiet title. *Id.* The Xias argued that the sale of their unit violated § 33-1228(C), and, alternatively, that § 33-1228 was unconstitutional because it authorized a taking of private property for private use. *Id.* The Association and PFP Dorsey filed separate motions to dismiss, arguing the Xias failed to state a claim for which relief could be granted because the sale complied with § 33-1228. *Id.* ¶ 10. The superior court granted the Association and PFP Dorsey's motions. *Id.* The Xias appealed this dismissal. *Id.* ¶ 11.

¶10 The court of appeals reversed the superior court's order dismissing the Xias' claims. *Id.* at 560 ¶ 37. On appeal, the Xias argued that § 33-1228 was unconstitutional because it authorized a taking of private property for private use, and that the Association and PFP Dorsey violated § 33-1228(C) because it prohibited the forced sale of less than an entire condominium. *Id.* at 555 ¶ 13.

¶11 Initially, the court of appeals determined § 33-1228 was unconstitutional on its face. *Id.* ¶ 15. Nevertheless, the court of appeals held § 33-1228 was applicable to the Xias by consent because the Declaration incorporated the Condominium Act. *Id.* at 556 ¶ 17, 558 ¶ 24.

¶12 Having determined § 33-1228 applied to the Xias, the court of appeals went on to address which version of § 33-1228 applied. *Id.* at 556–58 ¶¶ 18–24. When the Xias purchased their unit, the 1986 version of § 33-1228 was in effect, but after the Xias purchased their unit, a 2018 amendment to § 33-1228 went into effect. *Id.* at 556–57 ¶ 21. The 2018 amendment changed subsection (G) of § 33-1228 to include relocation fees in unit owners' respective interests and provide a process for unit owners to challenge the fair market value assessment of a condominium association in the event of a pending termination and sale of the condominium. Relying on *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532 (2022), the court of appeals held the 2018 amendment to § 33-1228 could not apply to the Xias without separate consent. *Id.* at 557 ¶ 22. The court of appeals reasoned

that although the Declaration purported to incorporate the Condominium Act "as amended from time to time," the 2018 amendments to § 33-1228 were unforeseen and substantial. *Id.* As such, the 1986 version of § 33-1228 applied to the Xias. *Id.* at 558 ¶ 24.

¶13 Additionally, the court of appeals held that the Association and PFP Dorsey complied with § 33-1228(C), even though the termination agreement provided for the sale of less than the entire condominium. *Id.* at 559 ¶ 31. The court reasoned that although § 33-1228(C) permitted the forced sale of an entire condominium, the statute also allowed the forced sale of less than an entire condominium. *Id.* at 558–59 ¶¶ 29–30.

¶14 The Xias petitioned this Court for review. We granted review on the following issues: (1) whether § 33-1228 authorized the taking of private property for private use in violation of article 2, section 17 of the Arizona Constitution, either on its face or as applied in this case; (2) whether § 33-1228(C) required all of the common elements and units of a condominium to be part of a sale if any common elements or units of the condominium are to be sold pursuant to a condominium termination agreement; (3) whether the terms of an unconstitutional statute are enforceable as to the contracting parties if a contract incorporates the statute by reference; and (4) whether subsequent statutory amendments are incorporated into a condominium declaration if the condominium declaration incorporates the statute by reference. These are important issues of statewide concern. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶15 We review the constitutionality and interpretation of statutes de novo. *See, e.g., Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017); *State v. Holle*, 240 Ariz. 300, 302 ¶ 8 (2016). We also interpret questions of law, including contract interpretation, de novo. *See, e.g., Powell v. Washburn*, 211 Ariz. 553, 555–56 ¶ 8 (2006).

¶16 This case presents interrelated issues involving eminent domain, contract, and statutory provisions concerning the division of common interests in property. The Xias assert that § 33-1228(C), which governed the sale of condominium units following termination, is unconstitutional under article 2, section 17 of the Arizona Constitution both

on its face and as applied to them.  The Xias argue in the alternative that if we construe the statute to require the sale of all of the common elements and units, it would largely ameliorate the problem.  We address the discrete challenges to the forced sale in turn.[2]

## I.    EMINENT DOMAIN

¶17        Article 2, section 17 provides in relevant part that "[p]rivate property shall not be taken for private use." Ariz. Const. art. 2, § 17.  This provision provides significantly greater protection against takings for private use than does the Fifth Amendment's takings clause.  *Compare Kelo v. City of New London*, 545 U.S. 469, 483–90 (2005) (upholding the taking of a working-class neighborhood to facilitate amenities related to a private business), *with Bailey v. Myers,* 206 Ariz. 224, 227 ¶ 12 (App. 2003) ("Taking one person's property for another person's private use is plainly prohibited . . . .").

¶18        In addition to prohibiting government-executed takings for private use, article 2, section 17 prohibits the legislature from authorizing private individuals to take property for private use, except for some enumerated exceptions not implicated here.  *Inspiration Consol. Copper Co. v. New Keystone Copper Co.*, 16 Ariz. 257, 260–62 (1914) ("In authorizing the taking of private property for private use, the legislative department of the government is therefore limited to the purposes named in the Constitution."); *see also Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021) (stating government action—for example, through a regulation—that "results in [the] physical appropriation of property" violates the federal Takings Clause); *Horne v. Dep't of Agric.*, 576 U.S. 350, 361 (2015) (holding a regulation violated the federal Takings Clause).  The Xias contend that the Association could not have involuntarily sold their unit absent § 33-1228(C), which therefore renders the statute unconstitutional on its face or as applied to them.

¶19        We have no cause to resolve the constitutionality of § 33-1228(C) in other instances because the Association's power to forcibly sell the Dorsey Place units in this case emanated not from that statute but

---

[2] As we conclude that § 33-1228(C) is not unconstitutional, as applied to the Xias, and thus not facially unconstitutional, we do not address the third question on which review was granted relating to whether an unconstitutional statute may be incorporated into a contract by reference.

from contract—specifically, the Declaration that all unit owners signed and to which their property interests were subject. "[P]arties are generally free to contract on whatever terms they choose." *Zambrano v. M & RC II LLC,* 254 Ariz. 53, 56 ¶ 1 (2022). Among the terms to which they generally may agree is a waiver of constitutional rights. *See State ex rel. Polk v. Hancock*, 237 Ariz. 125, 128–29 (2015); *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 236 Ariz. 410, 411 ¶ 6 (2014).

**¶20** Article 13.4 of the Declaration provided that the condominium may be terminated by the agreement of unit owners comprising at least ninety percent of the votes. No one disputes that occurred here. Although the Declaration did not otherwise expressly provide for the disposition of ownership interests following termination, Article 2.1 stated that the property was "submit[ted] . . . to the provisions of the Condominium Act for the purpose of creating a condominium in accordance with the provisions of the Condominium Act." The Declaration referenced the Condominium Act no fewer than thirty-six times, and specific provisions were also repeatedly referenced. The Condominium Act's presence was so ubiquitous that one could not even skim the Declaration without noting it. Hence, the Condominium Act's applicability here is a consequence of a clear contractual agreement to incorporate the statute by reference that the parties to the Declaration were at liberty to make. *See, e.g.*, *Indus. Comm'n v. Ariz. Power Co.*, 37 Ariz. 425, 431 (1931).

**¶21** The Condominium Act provided a statutory default process for condominium terminations and for disposing of ownership interests in the event of termination. § 33-1228. Under the Condominium Act, termination resulted in title to a unit being vested either in the Association if a sale occurred, or in all unit owners as tenants in common if a sale did not occur. § 33-1228(D)–(E). Thus, the termination of the condominium as a whole was what resulted in the transfer of title to a specific unit from the unit owner. *See* § 33-1228(E) ("While the tenancy in common exists, each unit owner and the unit owner's successors in interest have an exclusive right to occupancy of *the portion of the real estate that formerly constituted the unit owner's unit*." (emphasis added)). The Xias signed up for this possibility by agreeing to the terms of the Declaration and buying a unit subject to the Condominium Act.

**¶22** Importantly, § 33-1228(J) provided that most of the statute's provisions—including subsection (C), the locus of the Xias' complaint—"do

not apply" if the declaration "contains provisions inconsistent with these subsections." In other words, condominium owners were free to contract around most of the Condominium Act's provisions. The Dorsey Place Declaration emphatically did not.[3]

¶23 For the foregoing reasons, because the Xias and other unit owners agreed to follow the Condominium Act, including § 33-1228(C)'s terms regarding a termination agreement, we do not address the constitutionality of the Condominium Act. In short, the Condominium Act did not effect a taking of the Xias' property.

## II. SALE OF THE ENTIRE CONDOMINIUM

¶24 The Xias argue that if the sale was permissible, § 33-1228(C) required that all of the common elements and units be sold, including the units belonging to PFP Dorsey. Here, the Association sold to PFP Dorsey only the six units it did not already own.

¶25 Section 33-1228(C) provided in full: "A termination agreement may provide that all the common elements and units of the condominium shall be sold following termination. If, pursuant to the agreement, any real estate in the condominium is to be sold following termination, the termination agreement shall set forth the minimum terms of the sale."

¶26 We read statutes to effectuate the plain meaning of the terms to which the legislators agreed, in their broader statutory context. *In re Riggins*, No. CV-23-0123-CQ, 2024 WL 974058, at *2 ¶ 12 (Ariz. March 7, 2024). If a provision is ambiguous, we may look to extrinsic sources, such as statutory history. *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 164 ¶ 20 (2017).

¶27 We begin with the foundational property law principle that, ordinarily, one party may not sell another's property. *See, e.g.*, *Buehman v. Bechtel*, 57 Ariz. 363, 375 (1941) ("One of the principal elements of property is the right of alienation or disposition." (citation omitted)); 26A C.J.S. *Deeds* § 277 (2024) ("A landowner cannot convey by deed a greater interest in property than she possesses.").

---

[3] The Xias have raised no contract defenses before us.

¶28    The source of the Association's power to take and sell the Xias' unit derived from the first sentence of § 33-1228(C), which stated that "[a] termination agreement may provide that *all* the common elements and units of the condominium shall be sold following termination." (Emphasis added). "All" means all—not less than all. Although "may" is permissive, *Garcia v. Butler*, 251 Ariz. 191, 194 ¶ 13 (2021); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012), "may" modifies "provide," not "all." Hence, the effect of the permissive "may" was to authorize conduct that otherwise could not lawfully occur. The words that follow, read as a whole, are what was authorized: selling all of the property.

¶29    Likewise, we apply the surplusage canon: we attempt to read statutes so that no language is rendered devoid of meaning. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552–53 ¶¶ 31–34 (2005); Scalia & Garner, *supra*, 174 (providing that, under the surplusage canon, every word in a statute must be given effect, and "[n]one should be ignored"). The court of appeals' reading of the first sentence of § 33-1228(C) could have been accomplished by authorizing that a termination agreement "may provide that common elements and units of the condominium shall be sold following termination," omitting the words "all the." Our interpretation gives meaning to those words.

¶30    Nor do we read the reference to the sale of "any real estate" in the second sentence, in light of the first, to have independently authorized the sale of less than the entire property. The second sentence's reference to the sale of "any real estate" accounted for two circumstances. The first circumstance was where a termination agreement provided for the sale of an entire condominium over a unit owner's objection. As discussed, a condominium association derived its power to do so from the first sentence of § 33-1228(C). The second circumstance occurred where a termination agreement provided for the sale of an entire condominium or only part of a condominium with the consent of all the unit owners whose property was to be sold. A condominium association derived its power to effect a sale under this circumstance not from the first sentence of § 33-1228(C), but from contract law. Thus, the second sentence of § 33-1228(C) did not grant condominium associations the additional power to sell less than all of a condominium over a unit owner's objection.

¶31         Again, applying the surplusage canon, we note the term "all" means "the whole amount, quantity, or extent of; as much as possible; every member or individual component of." *All*, Meriam-Webster available at https://www.merriam-webster.com/dictionary/all#dictionary-entry-1 (last visited Mar. 13, 2024). The term "any" means "one, some, or all indiscriminately of whatever quantity." *Any*, Merriam-Webster, https://www.merriam-webster.com/dictionary/any (last visited Mar. 13, 2024). Thus, the term "all" encompasses "any." By interpreting § 33-1228(C) to have required the sale of an entire condominium if any portion was to be sold over a unit owner's objection, we give meaning to both terms.

¶32         Other subsections of § 33-1228 support our interpretation. In particular, subsections (D) and (E) provided two scenarios: termination with and termination without sale of the property. Subsection (D) authorized a condominium association to contract for the sale of the condominium on termination, but only if a supermajority of unit owners agreed to the sale. § 33-1228(D). "If any real estate in the condominium is to be sold following termination, title to that real estate on termination vests in the association as trustee for the holders of *all* interest in the units." *Id.* (emphasis added). If the condominium association was selling less than the entire condominium, there would be no reason to require a supermajority of unit owners to agree to the sale or for the condominium association to take title to the property and act as trustee for all unit owners rather than only for the owners affected by a partial sale. The Xias also correctly point out that the language in subsection (D) that established the Association as trustee for the individual unit owners was consistent with a requirement requiring sale of all property. In selling the entire condominium instead of specific units, the Association as trustee would have a greater incentive to maximize the sale price for the entire property because all unit owners would be equally affected by the sale. *See, e.g.*, *Forest Guardians v. Wells*, 201 Ariz. 255, 262 ¶ 23 (2001); 76 Am. Jur. 2d *Trusts* § 526 (2023) ("[T]he trustee should secure competitive bidding and surround the sale with such other factors as will tend to cause the property to sell to the greatest advantage.").

¶33         Subsection (E) provided, "[i]f the real estate constituting the condominium is not to be sold following termination, title to *all* the real estate in the condominium vests in the unit owners on termination as tenants in common in proportion to their respective interests." § 33-1228(E) (emphasis added). If PFP Dorsey is correct that subsection (C) permitted a

sale of less than the whole condominium on termination, and subsection (D) required an association to only hold title for the parts to be sold, then "all the real estate in the condominium" could not be vested in the unit owners as tenants in common, as required by subsection (E). Subsections (D) and (E) are only given full effect if subsection (C) is interpreted as having solely authorized a sale of the entire condominium upon termination.

¶34 Finally, this interpretation is supported by the Arizona legislature's modifications to the Uniform Condominium Act, on which § 33-1228 is based; the Uniform Law Commission's (the "ULC") commentary to the Uniform Condominium Act; and the ULC's recent amendment and comment to the Uniform Common Interest Ownership Act, which replaced the Uniform Condominium Act. "[W]hen a statute is based on a uniform act, we assume that the legislature intended to adopt the construction placed on the act by its drafters. Commentary to such a uniform act is highly persuasive unless erroneous or contrary to the settled policy of Arizona." *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 332 ¶ 25 (2001) (cleaned up).

¶35 The Condominium Act is a modified version of the Uniform Condominium Act. *See* 1985 Ariz. Sess. Laws, ch. 192, § 3 (1st Reg. Sess.). At the time the legislature adopted the Condominium Act in 1985, § 2-118 of the Uniform Condominium Act provided:

> (c) In the case of a condominium containing only units having horizontal boundaries described in the declaration, a termination agreement may provide that all the common elements and units of the condominium shall be sold following termination. If, pursuant to the agreement, any real estate in the condominium is to be sold following termination, the termination agreement must set forth the minimum terms of the sale.

> (d) In the case of a condominium containing any units not having horizontal boundaries described in the declaration, a termination agreement may provide for sale of the common elements, but may not require that the units be sold following termination, unless the declaration as originally recorded

12

provided otherwise or unless all the unit owners consent to the sale.

Unif. Condo. Act § 2-118(c)–(d) (Unif. L. Comm'n 1980).

¶36 In a comment, the ULC explained these sections dealt "with the question of when *all* the real estate in the condominium . . . may be sold without unanimous consent of all the unit owners." *Id.* cmt. 5 (emphasis added). The answer under the Uniform Condominium Act was "yes" when the condominium had horizontal boundaries and the termination agreement provided for a sale.

¶37 Arizona rejected different treatment for condominiums with horizontal boundaries and those without, and instead extended the Uniform Condominium Act's forced-sale power to all types of condominiums. In doing so, the legislature did not change the nature of the power, which was to sell the entire condominium without the consent of all unit owners if the termination agreement provided for a sale.

¶38 In 1984, the ULC combined the Uniform Condominium Act with other model legislation, to create the Uniform Common Interest Ownership Act. The 1984 Uniform Common Interest Ownership Act included § 2-118(c) & (d) from the Uniform Condominium Act.

¶39 In 2021, the ULC amended the Uniform Common Interest Ownership Act to combine subsections (c) and (d). Unif. Common Int. Ownership Act § 2-118(c) (Unif. L. Comm'n 2021). In combining the subsections, the ULC mostly retained the language that applied to condominiums with horizontal boundaries, except it provided that a termination agreement "may provide for the sale of *some or all* of the common elements and units." *Id.* (emphasis added). The comment to the amendment characterizes the change as "substantive" and states that the new language, unlike the prior version, "allows for the sale of some but not all common elements and units." *Id.* cmt. 6. The amendment and comment demonstrate that the Uniform Law Commission understood the prior language, which Arizona substantially adopted and applied to all condominiums, permitted only the sale of an entire condominium over a unit owner's objection. The amended language has not yet been adopted in Arizona, despite the legislature recently amending § 33-1228. Regardless, the Uniform Law Commission's understanding of § 2-118(c)'s

operative language, which § 33-1228(C) adopted, is consistent with our interpretation.

¶40            For all these reasons, we construe § 33-1228(C) as having authorized only a sale of all condominium property if the termination agreement provided for a sale. Thus, the forced sale of the Xias' unit alone rather than as part of a sale of all common elements and units of the condominium was impermissible under § 33-1228(C).

## III.    WHICH STATUTORY VERSION APPLIED

¶41            The Xias argue that if the Declaration intended the reference to § 33-1228 as a contractual term, as we find here, subsequent amendments to the statute apply only if they fall within unit owners' reasonable expectations. The Xias do not argue that the termination and sale here were governed by amended statutory terms falling outside their reasonable expectations. Instead, they raise the point as illustrating the difficulties with deeming the statute a contractual term.

¶42            Ordinarily, when a contract incorporates a statute by reference, it imports only the statutory language in effect at the time of the contract, but the parties are free to agree to incorporate future changes. 11 *Williston on Contracts* § 30:23 (Richard A. Lord ed., 4th ed. 2022) ("[C]hanges in the law subsequent to the execution of a contract are not deemed to become part of [the] agreement unless its language clearly indicates such to have been [the] intention of [the] parties."); *Energy Rsrvs. Grp., Inc. v. Kan. Power and Light Co.*, 459 U.S. 400, 416 (1983) (suggesting that where a term incorporates present and future state and federal law, parties are deemed to agree to contract alteration by state price regulation and no federal constitutional Contract Clause violation occurs).

¶43            Here, the parties expressly incorporated into the Declaration the Condominium Act "as amended from time to time." Nonetheless, the court of appeals applied the pre-amended version of the Condominium Act, holding that incorporating the statutory amendments was impermissible under this Court's decision in *Kalway*. *See Cao*, 253 Ariz. at 558 ¶ 24.

¶44            In *Kalway*, we invalidated certain amendments to covenants, conditions, and restrictions adopted pursuant to a provision that allowed amendments by majority vote of homeowners, holding that a homeowners'

association "cannot create new affirmative obligations where the original declaration did not provide notice to the homeowners that they might be subject to such obligations." 252 Ariz. at 538 ¶ 14. We concluded that "allowing substantial, unforeseen, and unlimited amendments would alter the nature of the covenants to which the homeowners originally agreed." *Id.* ¶ 15.

**¶45** Had PFP Dorsey exercised its power to amend the Declaration, *Kalway* may have been applicable. But the Declaration is unamended. Rather, the statutes that are expressly incorporated into the Declaration by reference were amended, and that possibility of statutory amendment was expressly anticipated. Such amendments do not implicate the concerns of self-dealing that apply when parties to a contract attempt to alter contract terms to the detriment of other parties; and no claim was raised here that the statutory amendments impaired contractual obligations in violation of article 2, section 25 of the Arizona Constitution. Hence, the 2018 version of § 33-1228, which was in effect when the condominium was terminated, applied.

## ATTORNEY FEES

**¶46** The Xias seek attorney fees on a variety of bases. Article 13.15 of the Declaration provides for attorney fees if a unit owner who "employs an attorney . . . to enforce compliance with or recover damages for any violation or noncompliance with the Condominium Documents" prevails in the action. Likewise, A.R.S. § 12-341.01 authorizes courts to award attorney fees for actions arising out of contract.

**¶47** Under these provisions, we award the Xias reasonable attorney fees for amounts expended to enforce the Declaration. However, as the eminent domain challenge was unsuccessful, the Xias may not recover attorney fees attributable to those claims.

## DISPOSITION

**¶48** We vacate the court of appeals' decision. We affirm the trial court except as to the issues encompassed in Part II of this Opinion, and remand to that court for further proceedings consistent with this Opinion.